WOODEN V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-01-395-CR

TRAYSON L. WOODEN APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

OPINION

------------

Introduction

Appellant Trayson L. Wooden appeals his conviction by a jury of aggravated robbery with a deadly weapon.  In three points, Wooden contends that the evidence is legally insufficient to support his conviction and that the trial court erred in overruling objections to improper jury argument by the prosecutor.  Because we hold that the evidence is legally insufficient to support appellant’s conviction, we reverse and render a judgment of acquittal.

Background

On July 29, 2000, Gary Russell was traveling southbound on Hemphill Street in Fort Worth.  As he passed the Mexia store, he noticed a parked truck in the parking lot to his right.  The hood and front driver’s side door of the truck were open, and a man was lying on the front seat on his stomach.  A green car was pulled up next to the truck, and Russell saw four men get out of the car and “spread[] out around” the truck.

Thinking the men were “up to no good,” Russell turned right into the parking lot and pulled his car around so that he could see the truck and the four men.  He watched them for about three to five minutes.  While watching, he saw one of them reaching under the hood of the truck, one leaning into the cab of the truck, where the man was lying down, and moving his hands back and forth, and a third “trying to open something up” in the back of the truck. Russell said he thought there was a toolbox in the back of the truck.  A fourth man, whom Russell later identified as appellant, was “looking around.”

While appellant was looking around, he noticed Russell watching them.  After appellant saw Russell, the four men got in the green car.  The driver pulled the car toward Russell, then turned around so that the passenger side of the car was next to the driver’s side of Russell’s car.  Appellant was in the front passenger seat.  Three of the four men, including appellant, started talking to Russell, asking him “What’s up with you?” and similar things.  The driver of the car used profanity and talked to Russell in a vulgar way.  Russell told the men he was a security guard, but they did not believe him.

While the driver was talking to Russell, Russell saw the back seat passenger, who was seated behind appellant, reach down.  When the man sat back up, Russell saw the barrel of a gun pointing from the man’s arm toward Russell’s car.  The man kept yelling at Russell, “What’s up with you?”  When Russell saw the gun, he picked up his cellular phone to dial 911, and the men drove away.  Russell did not call 911 because he saw two police cars driving by on Hemphill.  He stopped the officers and told them what had happened. 

Officer Charles Davis was on patrol the morning of July 29, 2000 when he saw a green car in front of him at the intersection of Hemphill and Berry. There were three men in the car, and each of them kept turning around to look at him.  Officer Davis pulled his car behind the green car and ran a check on the car’s license plate.  When the check came back clean, Officer Davis pulled back into the right hand lane of Hemphill and lost sight of the car when it took a right on West Capps.

About thirty seconds after Officer Davis lost sight of the green car, he received a dispatch, which prompted him to try to follow the green car.  Officer Davis found the green car and followed it back to Hemphill where Officer Davis initiated a traffic stop.  Officer Davis said he believed that the front seat passenger turned around and looked at him.  Twice the green car pulled to the right and slowed down as if to stop.  But the car did not stop, and Officer Davis had to follow the car for about fifteen minutes at speeds of up to eighty miles per hour.

Around 3118 Avenue L, appellant threw some compact discs out of the car, which the police later found.  On Vaughn Boulevard all three men jumped out of the car, and Officer Davis pursued them on foot to a house.  The rear seat passenger was standing on the front porch of the house with some other men.  Officer Davis found appellant and the driver of the green car hiding under a sheet on a mattress inside the house.  The police arrested all three men.  

Police officers later found a rifle with a sawed-off barrel behind a Racetrac station where Officer Davis had followed the car, but lost sight of it in a dust cloud.  A crime scene search officer was unable to find any usable fingerprints on the rifle.  A driver’s license number was etched into the rifle.  The number did not match the license number of any of the three men that were in the green car.

Russell identified three of the men, including appellant.  Appellant gave the following statement to the police after his arrest:

I was sitting in the front passenger seat of the green car.  Cornelious was driving.  Gary was in the back seat.  We were cruising down Hemphill.  We saw the red pickup truck in a parking lot with the driver[‘]s door . . . open and I saw a man laying in the front seat with his legs hanging out.  We pulled in the parking lot to check on him and we saw that he was asleep.  Me and Gary [sic] got out to go check on him.  We were walking back to the car [when] the other car pulled up.  We got back in the car and we drove over to him and we talked to him.  The man asked us first if we had a problem and I asked him if he had a problem.  I had told him that man off in that truck looked dead but he was asleep.  The man told us that he was a security guard and told us that man had been there all night.  Then we left.  We had been driving on Hemphill [S]treet and we turned off on another street and then the patrol car came back and they got behind us.  The patrol car then turned on the light behind us and we started to stop and then we took off and then we were picking up speed. W[e] ended up on the east side.  We were on Ave [L] at Mrs[.] Mary’s house.  It was some peoples [sic] house and [their] mamma lives there.  As we drove by the house near the field I threw the cd’s out of the car.  The cd’s belonged to Cornelious.  We then went on around the corner and ditched the car and ran back towards the house and we ran in the front door.  Me and Cornelious striped [sic] our clothes and jumped in the bed and hid[] from the police.  Gary was the one that went to the juvenile center.  We did not put our hands inside the truck [and] we did not take anything.  We drove over to the other car to let them know we weren’t trying to take anything.  I did not throw out the gun. 

Romon Dominguez, the owner of the truck that Russell saw in the parking lot, testified at appellant’s trial that he had gone to the taco stand next door to the parking lot at 11:00 p.m. the night before.  He had drunk six beers while he was at home that night.  When Dominguez tried to leave the taco stand, his truck wouldn’t start, so he opened the hood, got in the truck, locked the doors, and lay down to sleep until the next morning.  Dominguez said he awoke several times in the night, but he did not see or hear anyone in or around his truck.  He did not remember whether the driver’s side door was open or closed when he woke up the next morning.

Dominguez said he had $300 in cash with him in the truck, as well as a cooler in the truck.  None of these items were taken.  In addition, Dominguez testified that no other items were taken from either the inside of the truck or the toolbox.  The toolbox was still locked when he woke up, and there were no scratches or pry marks on it.

Analysis

In his first point, appellant contends the evidence is legally insufficient to support his conviction for aggravated robbery.  Specifically, appellant contends the evidence is not sufficient to prove that he was a party to either the attempted theft or the aggravated assault with a deadly weapon that comprise the charged aggravated robbery. 

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict.  
Cardenas v. State, 
30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000); 
Narvaiz v. State
, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992), 
cert. denied
, 507 U.S. 975 (1993).  The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
McDuff v. State
, 939 S.W.2d 607, 614 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 844 (1997).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). 
 The standard for review is the same for direct and circumstantial evidence cases.  
Kutzner v. State
, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).

Section 29.02(a)(2) of the penal code defines robbery as follows:  “A person commits an offense if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.”  
Tex. Penal Code Ann.
 § 29.02(a)(2) (Vernon 1994).  The offense becomes aggravated if the person “uses or exhibits a deadly weapon.”  
Id
. § 29.03(a)(2).  “In the course of committing theft” includes an attempted theft and the “immediate flight” from that attempted theft.  
Id
. § 29.01(1).  A person is guilty of an attempted offense if “with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended.”  
Id
. § 15.01(a).

Appellant was convicted as a party to the aggravated robbery.  Section 7.02(a)(2) of the penal code provides that a person is criminally responsible for another person’s conduct if “acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.”  
Id
.
 § 7.02(a)(2).

Standing alone, proof that an accused was present at the scene of the crime or assisted the primary actor in making his getaway is insufficient. 
 Scott v. State
, 946 S.W.2d 166, 168 (Tex. App.—Austin 1997, pet. ref’d).  The evidence must show that at the time of the offense the parties were acting together, each contributing some part towards the execution of their common purpose. 
 Brooks v. State
, 580 S.W.2d 825, 831 (Tex. Crim. App. [Panel Op.] 1979); 
Armstead v. State
, 977 S.W.2d 791, 797 (Tex. App.—Fort Worth 1998, pet. ref’d).  Evidence is legally sufficient to convict under the law of parties when the defendant is physically present at the commission of the offense and encourages its commission by acts, words, or other agreement.  
Barnes v. State
, 56 S.W.3d 221, 238 (Tex. App.—Fort Worth 2001, pet. ref’d).  Whether an accused participated as a party to an offense may be determined by examining the events occurring before, during, and after the commission of the offense and by the actions of the accused which show an understanding and common design to commit the offense. 
 Beier v. State
, 687 S.W.2d 2, 4 (Tex. Crim. App. 1985); 
Armstead
, 977 S.W.2d at 797.  In determining the legal sufficiency of the evidence to show appellant's intent, and faced with a record that supports conflicting inferences, we “must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution.”  
Matson v. State
, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991); 
Armstead
, 977 S.W.2d at 797.

Here, the evidence is sufficient to prove that appellant and his companions committed an attempted theft even though there is no evidence that any property was actually stolen.  
See Finley v. State
, 917 S.W.2d 122, 124-25 (Tex. App.—Austin 1996, pet. ref’d) (holding that evidence was sufficient to prove attempted theft component of aggravated robbery charge when appellant and his companions smashed hole in car window with a rock, one of them stuck a hand inside the hole asking where the car keys were, and another of the men said “Don't worry about that, we take what we want”).  The jury could rationally infer that appellant and the three men he was with intended to steal the truck or property from the truck and committed acts amounting to more than mere preparation by opening the truck door, trying to open the toolbox, reaching under the hood, and posting appellant as a lookout.

Appellant further contends that even if the evidence is sufficient to prove attempted theft, it is not sufficient to prove that appellant “solicited, encouraged, directed, aided, or attempted to aid” the other passenger of the car in threatening Russell by pointing the gun.  The State contends that, to be guilty of aggravated robbery as a party, Wooden need only have solicited, encouraged, directed, aided, or attempted to aid the attempted theft.  The State relies on this court’s opinion in 
Koontz v. State,
 868 S.W.2d 27, 29 (Tex. App.—Fort Worth 1993, pet. ref’d), for the proposition that “[a]ny act taken which aids either the theft or the violence aids the commission of the robbery.” 

We disagree with the State’s interpretation of our holding in 
Koontz
.  In that case, the appellant admitted being present during a home invasion aggravated robbery, but claimed that he was not a party to the offense because he did not personally assault the victim or take any of his property.  We held that the evidence showed that the appellant aided the aggravated robbery because his presence helped overwhelm the victim.  
Id
.  The opinion states:

There is no question that the evidence shows the commission of 
the offense of aggravated robbery with a deadly weapon
 on the occasion in question.  The real issue is whether the evidence as we have described it is sufficient to show that Koontz solicited, encouraged, directed, aided, or attempted to aid others to commit 
the offense
.  We hold that it is because Koontz's presence with his companions at the time of the 
aggravated robbery
 aided or attempted to aid them in the commission of 
the offense
 by causing the victim and the victim's son to be overwhelmed by the sheer number of those involved, and because 
the jury was free to infer Koontz's intent in being present at the robbery
 by virtue of his having been present at a similar robbery involving a different victim. 

Id
. (emphasis added).  Thus, the appellant’s acts in 
Koontz
 aided the entire offense, that is, both the theft and assaultive component of the aggravated robbery, because his presence facilitated both components of the offense.  In addition, the jury could infer that he intended to aid the entire offense because his presence at a similar aggravated robbery indicated he had knowledge that the charged aggravated robbery would occur.

Rule 7.02(a)(2) of the penal code requires that a party to an offense intend to promote or assist “the offense.”  Therefore, the State was required to prove that appellant intended to promote or assist an aggravated robbery and that he solicited, encouraged, directed, aided, or attempted to aid in the commission of an aggravated robbery.  
See Glivens v. State
, 918 S.W.2d 30, 34 (Tex. App.—Houston [1
st
 Dist.] 1996, pet. ref’d); 
Woods v. State
, 749 S.W.2d 246, 248 (Tex. App.—Fort Worth 1988, no pet.).
(footnote: 1)  In order to convict a defendant as a party to an aggravated offense, the State must prove that the defendant was criminally responsible for the aggravating element.  
See Stephens v. State
, 717 S.W.2d 338, 340 (Tex. Crim. App. 1986).  In other words, the defendant must have, with intent to promote or assist the aggravated robbery, solicited, encouraged, directed, aided, or attempted to aid the other person in committing the aggravating element.  For example, in 
Stephens
, the court found the evidence legally insufficient to support a conviction for aggravated rape when there was no evidence the defendant in that case was in the room with the other participants in the rape when they made the threat against the victim that aggravated the offense, nor that the defendant knew the other participants had threatened the victim.  
Id
. at 339.

This case is similar to 
Stephens
 because there is no evidence in the record that appellant knew the gun was in the car or that appellant aided or encouraged the other passenger to threaten Russell with the gun.  Appellant sat in the front passenger seat of the car, and the man with the gun sat behind appellant.  Appellant did not drive the car.  Russell said that he did not see any weapon while the men were looking around the truck.  The prosecutor argued during his closing argument that appellant would necessarily have seen the gun, either when he entered the car or when the person with the gun brought it into the car.  However, the trial court sustained an objection to this argument and instructed the jury to disregard it.  While appellant’s statement, “I did not throw out the gun,” is some evidence that appellant knew a gun was thrown out of the car, it does not indicate that appellant knew the gun was in the car when the men were talking to Russell or that appellant encouraged his companion to threaten Russell with the gun.  Furthermore, although appellant’s actions while the police were following the green car indicate an intent to facilitate the flight, absent any evidence that appellant knew the gun was in the car, the evidence is insufficient to prove that appellant aided the flight in order to facilitate the aggravated robbery, rather than the attempted theft.  

During oral argument before this court, the State claimed for the first time that penal code section 7.02(b) applies to this case.  
Tex. Penal Code Ann.
 § 7.02(b).  Section 7.02(b) provides:

If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

Id
.  

In this case, the indictment did not allege that appellant was criminally responsible under rule 7.02(b), and the court’s jury charge did not authorize the jury to convict appellant under rule 7.02(b).  Even if they had, however, the evidence would be insufficient to convict appellant as a party under rule 7.02(b).  There is no evidence in the record that appellant agreed to commit a felony.  The only evidence of the value of any of the property the State alleges appellant and his companions were attempting to steal is $300 in cash.  In order for an attempted theft to be a felony, the value of the property in question must be at least $20,000.  
See id
. § 15.01(d) (stating that “[a]n offense under this section is one category lower than the offense attempted”); 
id
. § 31.03(e)(4) (Vernon Supp. 2003) (providing for state jail felony level of punishment); 
id
. § 31.03(e)(5) (providing that theft offense is “a felony of the third degree if the value of the property stolen is $20,000 or more but less than $100,000“).  It is the State’s burden to prove the value of the property in a theft case.  
See
 
Lily v. State
, 789 S.W.2d 433, 435 (Tex. App.—Houston [14
th
 Dist.] 1990, no pet.) (holding that “[v]aluation of the property at above the threshold amount is an essential element of the offense which the State must prove”).  Accordingly, the State did not introduce sufficient evidence that the attempted theft was a felony offense.  Likewise, on the facts of this case, the State did not show that appellant agreed to commit a robbery because, absent Russell’s testimony that appellant’s companion pointed a gun at Russell, there is no evidence in the record that appellant and his companions verbally or by other conduct threatened Russell with death or bodily injury.  
See
 
Tex. Penal Code Ann.
 § 29.02.  Thus, section 7.02(b) does not apply in this case.

At most, the record evidence in this case shows appellant’s intent to promote or assist an attempted theft.  
Contra Escobar v. State, 
28 S.W.3d 767, 772-76 (Tex. App.—Corpus Christi 2000, pet. ref’d) (holding that evidence was legally and factually sufficient to support conviction for aggravated robbery when appellant and his companions stole merchandise from a department store and one of appellant’s companions, who had left the store before appellant and was sitting in the front seat of a parked car outside the store, pointed a gun at a store employee who followed appellant, and appellant, who could not have gotten into the car without seeing the gun, nevertheless got into the backseat of the parked car and fled with his companions).  Thus, we sustain appellant’s first issue.
(footnote: 2)
Conclusion

Because the evidence is legally insufficient to support appellant’s guilt, we reverse the judgment of the trial court and render a judgment of acquittal.  
Tex. R. App. P.
 43.2(c), 51.2(d); 
Burks v. United States
, 437 U.S. 1, 16-18, 98 S. Ct. 2141, 2150-51 (1978); 
Greene v. Massey
, 437 U.S. 19, 24-25, 98 S. Ct. 2151, 2154-55 (1978); 
Clewis v. State
, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996).

TERRIE LIVINGSTON

JUSTICE

PANEL A: DAY, LIVINGSTON, and DAUPHINOT, JJ.

PUBLISH

[DELIVERED JANUARY 16, 2003]

FOOTNOTES
1:
The State has interpreted this court’s statement in 
Woods
, that “[i]n order to convict [an] appellant of aggravated robbery under section 7.02(a)(2) the State had to prove that [the] appellant aided and abetted as to each element of 
the offense of aggravated robbery
,” as requiring a finding that the defendant actively participated in each element of the charged offense.  
Woods
, 749 S.W.2d at 248.  But rule 7.02(a)(2) does not require that a party’s actions constitute one or more elements of the intended offense, only that the party’s actions show the intent to promote or assist the offense and that the party encouraged, solicited, directed, or aided the commission of the offense.  
See
 
Tex. Penal Code Ann.
 § 7.02(a)(2).  For example, while holding someone down does not constitute an aggravated assault, holding someone down so that a companion can cut that person’s face with a razor blade shows an intent to promote or assist an aggravated assault and aids the commission of aggravated assault.  
See In re S.R.C.
, 59 S.W.3d 762, 762-63 (Tex. App.—Austin 2001, no pet.).  Thus, the State’s interpretation of this court’s statement in 
Woods
 is incorrect.  The quoted language correctly states the law of parties applicable to that case:  that to be guilty as a party to aggravated robbery, a defendant must 
intend to promote or assist an aggravated robbery—not just a theft—and solicit, encourage, direct, aid, or attempt to aid another person in committing aggravated robbery.  
See Woods
, 749 S.W.2d at 248. 

2:
Because by sustaining appellant’s first issue we must render a judgment of acquittal, we do not address appellant’s second issue.  
See
 
Tex. R. App. P.
 47.1.