Terrance Davis v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-457-CR

TERRANCE WAYNE DAVIS A/K/A TERRANCE DAVIS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

A jury convicted Appellant Terrance Wayne Davis of aggravated robbery with a deadly weapon and assessed punishment at thirty years’ confinement. In a single point, Davis challenges the legal sufficiency of the evidence underlying his conviction.  We will affirm.

II.  Factual Background

Davis was involved in an altercation with William Holmes on June 13, 2000.  The police arrived and subsequently arrested Davis’s girlfriend.  The following day, Holmes and Paul Harrison encountered Davis, Ryan Letterman, and David Carrington in a parking lot between the Union Gospel Mission and the Day Resource Center in Fort Worth.
(footnote: 2)  Holmes approached Davis and apologized for the altercation that had transpired the day before.  However, Davis, still angry that police had arrested his girlfriend, told Holmes that Holmes must get his “other half” out of jail by the next day or Davis would kill him.  

Holmes and Harrison began to walk towards the train station, but Davis, Letterman, and Carrington followed and forced them up a hill behind the shelter. Davis told Harrison to take his backpack off, and Letterman and Carrington told Holmes and Harrison to get on their knees.  Carrington began kicking Holmes, and Letterman struck Holmes and Harrison over the head with a bottle.  Davis, who had been standing back observing, then pushed the heel of his shoe into Holmes’s throat, preventing Holmes from breathing.  Davis subsequently told Holmes to cut Harrison’s throat with a knife that had been removed from Holmes’s pocket.  Frightened, and worried for his own safety if he failed to comply with Davis’s demand, Holmes cut Harrison’s throat.
(footnote: 3) 

Sometime during these events, Carrington emptied Harrison’s backpack and discovered two wallets and six packs of cigarettes.  Davis, Letterman, and Carrington each took two packs of cigarettes, and Letterman gave one wallet to Davis.

After the confrontation, Donald Henderson, who was picking up sack lunches near the Presbyterian Night Shelter, saw Holmes and Harrison running towards him.  The men were splattered with blood.  Henderson saw Davis and two other individuals walking in the opposite direction.  Henderson confronted Davis and his companions near the Day Resource Center and asked what had happened; they did not respond.

Medical personnel arrived and tended to Holmes’s and Harrison’s injuries. Holmes suffered bruises to his torso and had a large gash on his head that appeared to have glass in it.  Harrison’s face was bloody and he had a cut on his throat.

After speaking with Holmes, Harrison, and Henderson, a police officer located and detained three individuals matching the descriptions of Davis, Letterman, and Carrington.  The officer found wallets, packs of cigarettes, and Harrison’s Social Security card.  The ambulance transporting Holmes and Harrison arrived at the location where police had Davis, Letterman, and Carrington detained, and Holmes identified the three men as the individuals who had assaulted him.
(footnote: 4) 

III.  Law and Application to Facts

In his sole point, Davis argues, generally, that the evidence is legally insufficient to sustain his conviction for aggravated robbery with a deadly weapon.  
In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

Section 29.02 of the Texas Penal Code defines robbery as follows:

(a)  A person commits an offense if, in the course of committing theft . . . and with the intent to obtain or maintain control of the property, he:

(1) intentionally, knowingly, or recklessly causes bodily injury to another; or

(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

Tex. Penal Code Ann.
 § 29.02(a)(1), (2) (Vernon 2003).  The robbery becomes aggravated if the perpetrator uses or exhibits a deadly weapon.  
Id
. § 29.03(a)(2).

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. 
Id
. 
§ 7.01(a).  Furthermore, a person is criminally responsible for an offense committed by the conduct of another if acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.  
Id
. § 7.02(a)(2).  Evidence is legally sufficient to convict under the law of parties when the defendant is physically present at the commission of the offense and encourages its commission by acts, words, or other agreement.  
See Wooden v. State
, 101 S.W.3d 542, 546 (Tex. App.—Fort Worth 2003, pet. ref’d).

Here, the evidence viewed in the light most favorable to the verdict shows that Davis, Letterman, and Carrington, in the course of committing theft, intentionally, knowingly, or recklessly caused bodily injury to both Holmes and Harrison.  Carrington kicked Holmes, Letterman struck Holmes and Harrison with a bottle, and Davis pressed his heel up against the throat of Holmes, restricting his airflow.  Davis told Holmes to cut Harrison’s throat with a knife, and Holmes complied out of fear for his life.  Carrington and Letterman took two wallets and six packs of cigarettes from Harrison’s backpack and divided these items between themselves and Davis.  Officers recovered these items from Davis, Letterman, and Carrington after apprehending them.  Finally, Holmes identified Davis, Letterman, and Carrington as the individuals who assaulted and robbed them.  

Concerning the deadly weapon finding, the State called the first police officer to arrive at the scene as a witness, and he testified that a bottle and a knife are both capable of causing deadly or serious bodily injury, are therefore deadly weapons, and were used as deadly weapons in this case.  
See Hawkins v. State
, 605 S.W.2d 586, 588 (Tex. Crim. App. [Panel Op.] 1980) (“Although a knife is not a deadly weapon per se . . . it may be shown to be a deadly weapon . . . .”). 

In his brief, Davis states that “[p]ivotal to this point is the testimony of Ryan Letterman, a co-defendant, who testified that the appellant was not involved in any plan to rob the victims in this case.”  Notwithstanding whether Davis was involved in a plan to rob Holmes and Harrison, the evidence is legally sufficient to support a conviction for aggravated robbery so long as a rational jury could have found that Davis had the appropriate culpable mental state at the time of the commission of the offense.  
See 
Tex. Penal Code Ann.
 § 6.02(a) (“Except as provided in Subsection (b), a person does not commit an offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires.”); 
Cook v. State
, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994) (“This case involves the most basic and fundamental concept of criminal law, that in order to constitute a crime, the act or 
actus reus
 must be accompanied by a criminal mind or 
mens rea
.”).  

Thus, viewing the evidence in the light most favorable to the verdict, the jury could rationally have found that Davis, acting either alone or as a party, committed the offense of aggravated robbery with a deadly weapon beyond a reasonable doubt.  
See Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789; 
Wooden
, 101 S.W.3d at 546.  Accordingly, we overrule Davis’s point.

IV.  Conclusion

Having overruled Davis’s sole point, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: WALKER, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: December 23, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4.

2:
Davis, Letterman, Carrington, Holmes, and Harrison often reside at the Presbyterian Night Shelter in Fort Worth. 

3:
Holmes did not cut Harrison’s throat “hard,” and the blade was dull.

4:
Officers also retrieved Holmes’s knife from him.  It appeared to have blood on it.