ALEXANDER V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-136-CR

MARVIN DWAYNE ALEXANDER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Marvin Dwayne Alexander appeals his conviction and forty-five-year sentence for robbery causing bodily injury.  In two points, appellant argues that the evidence is legally and factually insufficient to prove that he was acting with intent to promote or assist in the commission of the offense or that he aided or attempted to aid Karl Walker in committing the offense.  We affirm.

II.  Background Facts

On August 21, 2004 at approximately 12:30 p.m., Marsha Hutchinson arrived at The Parks at Arlington (the mall) and parked at the north entrance of JCPenney.  Hutchinson parked with the rear of her car facing towards the driving lane, and the car next to her was facing the opposite direction, with the front of the car facing towards the driving lane.

When Hutchinson got out of her car, she noticed that two men were sitting in the car next to her car and that the passenger had his door open.  She nodded thank you to the passenger because he had shut his door so that she could get into her parking spot.  Hutchinson later tentatively identified the driver as appellant, and Joseph Edward Smith, another mall patron, identified the passenger as Walker.  After shopping for approximately forty-five minutes, Hutchinson left the mall and walked to her car.  She noticed that the two men were still in the car, but she was not suspicious because she thought that they were waiting for someone who was shopping inside the mall.  When she walked past the car parked next to her car, Hutchinson stated, “Oh, you’re still waiting, huh?” and “Well, they’ve got some pretty good sales in there.”  Hutchinson had several packages and went to her car to put them in the trunk.  While she was still loading the packages into her trunk, Hutchinson noticed that Walker had exited the car and was standing at the rear fender of her car on the driver’s side.  Without saying anything, Walker reached over and grabbed Hutchinson’s purse with both hands.  Hutchinson had her purse over her shoulder.  When Walker grabbed it, the purse moved down to her elbow, and she closed her arm so that the purse was in between the inside of her lower arm and the inside of her upper arm.  As Walker continued to pull on Hutchinson’s purse, she yelled at him to leave her alone.  While still struggling with Walker, Hutchinson lost her balance and fell onto the concrete parking lot, and Walker dragged her so that Walker was in the driving lane and Hutchinson’s body was still in between the cars.

During the struggle, Smith was walking out to his car that was parked in the JCPenney parking lot and saw that Walker was attempting to steal Hutchinson’s purse.  When Smith got closer to Walker, Smith yelled “What are you doing?” and Walker let go of the purse and walked back over to the car where appellant was waiting.  After Walker got into the car, appellant drove off.  Hutchinson suffered injuries to her leg, knee, hip bone, shoulder, hands, and the back of her left arm.

The jury found appellant guilty of robbery with bodily injury.  Appellant pleaded true to the habitual offender notice in his indictment, and the trial judge assessed appellant’s punishment at forty-five years in the Institutional Division of the Texas Department of Criminal Justice.

III.  Legal and Factual Insufficiency

In two points, appellant contends that the evidence is legally and factually insufficient to prove that he was acting with intent to promote or assist the commission of the offense or that he aided or attempted to aid Walker in committing the offense.  Specifically, appellant argues that the State failed to establish his criminal liability under the law of the parties doctrine.
(footnote: 2)
A.  Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment and, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.    In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.  Applicable Law

Section 29.02 of the penal code states “A person commits [the] offense [of robbery] if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he: (1) intentionally, knowingly, or recklessly causes bodily injury to another.” 
 Tex. Penal Code Ann.
 § 29.02(a)(1) (Vernon 2003).  Section 7.02(a)(2) of the penal code states “A person is criminally responsible for an offense committed by the conduct of another if: . . . (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.”  
Id. 
§ 7.02(a)(2).  

Theft occurs when a person “unlawfully appropriates property with intent to deprive the owner of property.”  
Id.
 § 31.03(a) (Vernon Supp. 2005)
.  The term “‘[i]n the course of committing theft’ means conduct that occurs in an attempt to commit, during the commission of, or in immediate flight after the attempt or commission of theft.”  
Id.
 § 29.01(1).

C.  Applicable Facts

The evidence shows that on August 21, 2004, Sergeant Kelly Velder, a police officer with the Arlington Police Department, was working off-duty security in uniform at the mall.  At 2:20 p.m., Sergeant Velder received a dispatch call that a robbery had been reported at the north side of JCPenney in the parking lot.  When he arrived at the parking lot, Nikki Burton, a mall security officer, was talking with Hutchinson.  Sergeant Velder took over the investigation when he got to the parking lot, and Hutchinson told him that someone had attempted to take her purse.  Sergeant Velder testified that Hutchinson was nervous and had marks on her arms, hands, and across her left shoulder.  He testified that he could tell where she had been dragged across the asphalt and noticed that her clothes were disarrayed.

Smith testified that on August 21, he arrived at the mall, parked his car in the JCPenney parking lot, and noticed that a parked silver Kia
(footnote: 3) had Walker and an unidentified man sitting in it.  Smith thought that it was strange that the men would be sitting in the car because it was hot outside, but he thought that they might be waiting for someone who was in the mall shopping.  After he had finished shopping, Smith walked out to his car.  From afar, he thought he saw kids playing in the parking lot, but when he got closer, he heard a woman yell “help me” and saw that Hutchinson was on her knees getting dragged by Walker.  He stated that Hutchinson was dragged approximately ten to fifteen feet.  When Smith got closer, he yelled to Walker, “What are you doing?”  Walker let go of Hutchinson’s purse and got into the passenger side of a Kia with Texas license plate number X66-PLV.  Smith testified that he did not look at the driver and he could not make a positive identification of the driver when Detective Jim Ford, a detective from the Arlington Police Department, contacted him to look at a photo lineup.  However, Smith later identified Walker from a photo lineup as the man who attempted to steal Hutchinson’s purse. 

Detective Ford testified that in August 2004, he was a member of the crimes against persons unit of the Arlington Police Department and received an offense report that detailed the robbery of Hutchinson.  Detective Ford received the description of the car and the license plate in the original offense report that was prepared by Sergeant Velder.  When Detective Ford ran a search in the “running motor vehicle” license plate database, Detective Ford discovered that the car belonged to EZ Auto Rental in Hurst, Texas.  When Detective Ford contacted EZ Auto Rental, he was told that a “Martha Stewart” had rented the car and that the car was still in her possession.  On August 26, Detective Ford met with Stewart at approximately 10:30 a.m., and Stewart told him that she had rented the car and that her boyfriend, appellant, should still have it.

At approximately 11:30 a.m. on August 26, Officer Crim of the Fort Worth Police Department contacted Detective Ford and told him that appellant was in custody.  Detective Ford met with appellant at the Fort Worth Police Department at 1:18 p.m.  At first, Detective Ford let appellant tell his version of events on August 21.  After appellant was finished telling his story, Detective Ford went back, wrote out a statement of events, had appellant read it aloud to him, and had appellant initial and sign it to show that he agreed with the statement.  Appellant was able to make changes to the written statement. 

In this written statement, appellant stated that on August 21
(footnote: 4) he was at Stewart’s apartment and drove the Kia to the car wash so that he and Stewart could take it back to the rental agency.  While he was at the car wash, appellant began experiencing chest pains and decided he needed to go to the hospital.  He saw “Rob Lowe” at the car wash, and Lowe took appellant to John Peter Smith Hospital and dropped him off.  Lowe was driving the Kia and appellant told him to take the car back to Stewart.  Appellant stated that he was in the hospital until August 23.  Appellant claimed that on August 26, while he was driving the car and Walker was a passenger, he was stopped by the Fort Worth Police Department because the car was reported stolen. Appellant stated that he did not steal the car or commit any robberies with the car.

After his meeting with appellant, Detective Ford went to John Peter Smith Hospital to verify whether or not appellant had been admitted to the hospital; however, there was no record that appellant had ever been a patient during the time that appellant claimed he had been.

On September 3, Detective Ford met with Hutchinson to show her a photo lineup that included appellant’s photo and a photo lineup that included Walker’s photo.  While looking at the photo lineup with appellant in it, she pointed to appellant’s picture and stated, “[T]hat looks like him, but I can’t be absolutely positive.”  Hutchinson could not identify Walker from the photo lineup.  On September 9, Detective Ford went back to meet with Hutchinson so that she could take another look at the photo lineups.  Hutchinson again pointed to appellant and stated that she thought that he was the driver, but she was not positive and could not identify Walker.

On September 13, Detective Ford met with appellant at the Tarrant County Jail.  Detective Ford told appellant that he was unable to verify appellant’s alibi on the day of the robbery.  Appellant agreed to speak with Detective Ford and allowed Detective Ford to take a second written statement. In this statement, appellant said that on August 21 he took the car to the car wash and that while he was there, he had a mild seizure and experienced chest pain and went to John Peter Smith Hospital.  He said he was there for approximately two hours and left around 10:00 a.m. after the hospital had given him some medicine, which made him feel better.  When he left the hospital, appellant claimed that he went back to the car wash to finish cleaning the car and then went to the south side of Fort Worth where he met up with Walker.  Appellant stated that he went to the mall with Walker and that appellant drove the Kia.

When they arrived at the mall, appellant stated that “Karl told me to sit in the car and chill[,] and he would look for a victim.”  While they were sitting in the car, Hutchinson pulled into the parking spot next to them and went inside the mall.  Appellant eventually got out of the car and went into the mall to look at the fountain and to get an ice cream cone while Walker stayed in the car. About ten minutes after appellant got back to the car, Hutchinson was walking back towards her car and stated, “Y’all still out here?”  When she opened her trunk, Walker got out of the car and walked up to Hutchinson and grabbed her purse, but Hutchinson held onto it.  About that time, a man walked up to Walker and said, “[S]top it, the police [are] on the way,” and appellant told Walker, “[L]et’s go.” 

D.  Analysis

Standing alone, proof that an accused was present at the scene of the crime or assisted the primary actor in making his getaway is insufficient.  
Wooden v. State
, 101 S.W.3d 542, 546 (Tex. App.—Fort Worth 2003, pet. ref’d); 
Scott v. State
, 946 S.W.2d 166, 168 (Tex. App.—Austin 1997, pet. ref’d).  The evidence must show that at the time of the offense the parties were acting together, each contributing some part towards the execution of their common purpose.  
Wooden
, 101 S.W.3d at 546; 
Brooks v. State
, 580 S.W.2d 825, 831 (Tex. Crim. App. [Panel Op.] 1979).  Evidence is legally sufficient to convict under the law of parties when the defendant is physically present at the commission of the offense and encourages its commission by acts, words, or other agreement.  
Wooden
, 101 S.W.3d at 546.  Circumstantial evidence may be used to prove party status.  
Escobar v. State
, 28 S.W.3d 767, 774 (Tex. App.—Corpus Christi 2000, pet. ref’d).  

Whether an accused participated as a party to an offense may be determined by examining the events occurring before, during, and after the commission of the offense and by the actions of the accused that show an understanding and common design to commit the offense.  
Id.  
In determining the sufficiency of the evidence to show an appellant’s intent and faced with a record that supports conflicting inferences, we must presume, even if it does not affirmatively appear in the record, that the trier of fact resolved any such conflict in favor of the prosecution, and we must defer to that resolution.  
Matson v. State
, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991)
; Escobar
, 28 S.W.3d at 774.
 

Appellant relies on 
Amaya v. State
, to show that the evidence was insufficient to demonstrate that he was involved in the robbery. 733 S.W.2d 168, 174 (Tex. Crim. App. 1986).  In 
Amaya
, the court of criminal appeals held that “we cannot hold [the defendants] accountable as parties without some indication that they knew they were assisting in the commission of an 
offense
.”  
Id.  
The court goes on to state that, 

We require a higher level of complicity from those we denote parties than those we denote primary actors, because the former are performing acts that are not illegal in and of themselves; the acts only attract criminal liability because of the result they are directed to, the commission of the crime. 

 

Id.  
Here, appellant knew that he was assisting in the commission of the offense because he stated that he watched Walker get out of the car and walk over to Hutchinson and attempt to steal her purse.  Additionally, after appellant heard that the police had been called, he told Walker, “[L]et’s go,” and waited for him to get back in the car before driving off. 

Here, appellant drove Walker to the mall; he provided access to the car that was used in the offense and that was also used to flee the scene.  After Walker told appellant to “chill” while Walker looked for a “victim,” appellant stayed in the car and left the car only to go into the mall to get an ice cream cone and look at the fountain.  In his statement to Detective Ford on September 13, appellant admitted that he was in the car when Walker got out of the car, walked over to Hutchinson, and attempted to take her purse.  Hutchinson testified that she yelled for someone to help her and that it was loud enough for someone far away to hear.  We believe that it is a permissible inference from the evidence that appellant was able to hear Hutchinson’s pleas for help because he was in the car next to Walker and Hutchinson and his written statement shows that he knew Walker was “look[ing] for a victim.” 

In addition, when appellant heard Smith tell Walker that the police had been called, appellant told Walker, “[L]et’s go,” and waited for Walker to get back into the passenger side of the car before driving off.  Appellant was also untruthful about his alibi the first time that Detective Ford questioned him.  Only after Detective Ford returned and told appellant that he knew that appellant had not been at the hospital did appellant admit that he was present during the robbery.  

After reviewing the evidence under the appropriate standards of review, we conclude that the jury could have inferred that appellant, by his actions in watching Walker attempt to steal Hutchinson’s purse and waiting for Walker to get into the car before driving off, intended to promote or assist in the robbery and thereby aided in the commission of the offense.  
See Escobar
, 28 S.W.3d at 774 (holding that defendant aided in aggravated robbery when he got into car while codefendant was holding gun out of window).  

Viewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that appellant aided in the commission of the offense; therefore, we overrule appellant’s first point.
(footnote: 5)  Additionally, when viewed neutrally, the evidence is not so obviously weak as to render the
 
verdict clearly wrong or so greatly outweighed by contrary proof as to indicate manifest injustice.  Thus, we overrule appellant’s second point.

IV.  Conclusion

Having overruled appellant’s two points, we affirm the judgment of the trial court.   

PER CURIAM 

PANEL F: LIVINGSTON, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: December 15, 2005

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
The law of parties doctrine is codified as section 7.02 of the penal code.  
Tex. Penal Code Ann.
 § 7.02 (Vernon 2003).

3:
The Kia was actually light blue in color.  

4:
In his written statements appellant refers to the date as August 14; however, all of the evidence and testimony state that the robbery occurred on August 21.

5:
The State correctly points out that under the 
corpus delicti 
rule, there was other evidence in addition to appellant’s statements showing the robbery actually occurred.  
See Salazar v. State
, 86 S.W.3d 640, 644 (Tex. Crim. App. 2002).