

## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-08-164-CR

JAMES GLEN GRAY                                                                    APPELLANT

V.

THE STATE OF TEXAS                                                                      STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In seven points, Appellant James Glen Gray appeals his convictions for two counts of felony murder. The judgments of the trial court are modified to reflect that the conviction for count one is robbery and the conviction for count two is robbery. As modified, the judgments are affirmed as to the convictions.

---

[1] *See* Tex. R. App. P. 47.4.

The portion of the judgments assessing punishment is reversed, and the cause is remanded for a new trial as to punishment only.

## II. Factual and Procedural History

Detective Mark Malcom of the Mansfield police department testified that in March 2003, Steven Ashford gave the police a written statement in which he confessed to the murders of Kevin Ogdie and Kelly Chance. When asked if anyone else had been involved, Ashford implicated two other individuals—Gray and Gray's brother, Michael. Upon further questioning, Ashford told Detective Malcom that he had used a .22 caliber pistol to commit the murders and that the gun could be found in the master bedroom of Gray's parent's house ("Gray's house"). After obtaining a search warrant, Detective Malcom searched Gray's house and found the gun in the exact location that had been described by Ashford. Detective Malcom also found in the house a fire safe that met the general description of a "secure chest" belonging to Kevin and Kelly, a pair of black slip-on shoes that matched Ashford's description of the shoes he had worn during the commission of the offense, and a knife believed to have been used in the commission of the offense.

During the investigation, the police obtained two written statements from Gray. In his first statement, Gray indicated that he had gone with Ashford to someone's apartment to pick up "some dope" and that Ashford had told him

2

to wait downstairs.  While waiting downstairs, Gray claimed that he had heard gunfire and that, after the gunfire had stopped, Ashford had yelled at him to come up to the apartment.  Upon entering the apartment, Gray said that he had seen a man and a woman who had been shot.  Gray stated that Ashford had told him that he had shot the man and woman because they owed him money and had stolen from him.

In a subsequent statement, Gray expanded upon the details of what had happened leading up to, and immediately after, the shootings:

> I met Stephen Ashford at an a[c]quaintance of mine's house.  I was installing cable at his house and [Ashford] was there.  We started talking and realized that we had met a few years back when he was a doorman at a bar.  We were messing around on the computer and started talking about computers.  I asked him if he could clean up my hard drives on my computers.  He said he could and asked if I would bring them over the next day.  I brought the computers over the next day [and] he told me one of them wasn't worth fixing and the other he could.  We were hanging out and had done some speed, and I asked if he could come over to my house and look at my tower at the house and install some programs.  We went to my house and did some work on [the] computer and did some more speed.  At the house we started talking about his military career and shooting guns.  My family has always been into hunting and fishing so I showed him a few of our guns and we talked about going to the range and shooting some skeet.  We ran out of speed and he said he had a guy that owed him and we could get it from him, and if he wouldn't give it to him he would beat him up and take it.  He had some walkie-talkies and said that if anything went wrong he would hit the button on the walkie-talkie.  We went over to the apartment.  My brother Mike drove and stayed in the car.  I stayed downstairs while [Ashford] went upstairs. He was upstairs for a minute or two, then I heard gunfire.

3

I looked around and didn't know [whether] it came from the apartment he was in or somebody else's. He opened the door and told me to come in. When I [went] in I saw a woman on the couch and a man on the ground. [Ashford] was standing in the living room next to the hallway—he was carrying my dad's .22 caliber pistol. He told me to put a radio in the bag [and] a CD player and then he kicked open a hall doorway and went into a bedroom. He came out with a small shoebox sized safe and put it in the bag. He told me to grab the bag and go. At that time I was about to throw up [and] I didn't want to argue with a man with a gun so I grabbed the bag and went downstairs and walked to the car. Right before we got to the gate he radioed Mike and told him not to go anywhere. When we got back, [Ashford] got in [the] front [and] I got in [the] back. I told my brother to get us home. . . . Mike asked what the easiest way was to get home, so [Ashford] told him how to get home. When we got home I told Mike what [had] happened so if anything happened to me he could report it. [Ashford] stayed with us another day and we took him home the next day. The next day after, I took his clothing and a bag with a radio he had left at our house. I am sorry for not coming forward earlier but I was afraid for myself and my family if I said anything. I am also sorry for ever getting involved with [Ashford].

The State charged Gray with two counts of felony murder—count one and count two—based on the theory that Gray, under the law of parties, had shot Kelly and Kevin in the course of committing aggravated robbery. The State also charged Gray with two counts of aggravated robbery with a deadly weapon—count three and count four. The State, however, eventually waived counts three and four and requested that they be placed under counts one and two as lesser included offenses; robbery was also included as a lesser included offense. At the close of evidence, a jury found Gray guilty of two counts of

4

felony murder.  In a separate trial on punishment, the trial court sentenced Gray to fifteen years' confinement for each count, to run concurrently.  This appeal followed.

### III.  Sufficiency of the Evidence

In his fourth through seventh points, Gray challenges the legal and factual sufficiency of the evidence to support his convictions for felony murder. Specifically, Gray asserts that the evidence is legally and factually insufficient because there was no evidence that he intended to commit an act clearly dangerous to human life, nor was there evidence that he had knowledge of Ashford's taking a gun to commit the offense.  We agree.

The jury charge in this case authorized the jury to convict Gray on count one and count two of felony murder either as a principal or as a party.  *See* Tex. Penal Code Ann. § 7.02(a)(2) (Vernon 2003).  Because the evidence is insufficient to support Gray's convictions as a principal,[2] we address whether the evidence is sufficient to support his convictions under the law of parties.

---

[2] The undisputed evidence presented at trial showed that Ashford had been the one to shoot Kevin and Kelly, and that Gray had not been in the room when the shootings occurred.

5

## A. Standards of Review

When reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

When a court of appeals concludes that evidence is legally insufficient to support a conviction, it may reform the judgment to reflect conviction of a lesser included offense if the evidence is sufficient to support conviction of the lesser included offense and either the jury was charged on the lesser included offense or one of the parties asked for but was denied such an instruction. *Collier v. State*, 999 S.W.2d 779, 782 (Tex. Crim. App. 1999).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Neal v. State*, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129

6

S. Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).  We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust.  *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417.  To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.  *Watson*, 204 S.W.3d at 417.

## B.  Applicable Law

A person commits felony murder if, in the course of and in furtherance of the commission or attempted commission of a felony, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.[3]  *See* Tex. Penal Code Ann. § 19.02(b) (Vernon 2003).  A person commits the felony offense of aggravated robbery if, in the course of committing a theft, he intentionally or knowingly places another in fear of imminent bodily injury or death and uses or displays a deadly weapon.  *See id.*

---

[3] As previously stated, the State alleged that the felony underlying Gray's felony murder charges was aggravated robbery.

7

§§ 29.02–.03 (Vernon 2003). A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property; appropriation of property is unlawful if it is without the owner's effective consent. *See id.* § 31.03(a), (b)(1) (Vernon 2003 & Vernon Supp. 2008).

Under the law of parties, "a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *See id.* § 7.01(a) (Vernon 2003); *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). A person is criminally responsible for the offense of another, and thus can be convicted as a party, if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person committing the offense. Tex. Penal Code Ann. § 7.02(a)(2). Though mere presence does not automatically make one a party to a crime, it is a circumstance tending to prove party status and, when considered with other facts, may be sufficient to prove that the defendant was a participant. *Porter v. State*, 634 S.W.2d 846, 849 (Tex. Crim. App. [Panel Op.] 1982). In determining whether the defendant acted as a party, we review events occurring before, during, and after the offense and may rely on actions of the defendant that show an understanding and common design to commit the offense. *King v. State*, 29 S.W.3d 556, 564 (Tex. Crim. App. 2000).

## C. Discussion

In order to convict Gray as a party to felony murder based on the underlying felony of aggravated robbery, the State had to prove that Gray was criminally responsible for Ashford's use or exhibition of a deadly weapon during the offense. *See Stephens v. State*, 717 S.W.2d 338, 340 (Tex. Crim. App. 1986) (stating that, in order to convict defendant as a party to aggravated offense, State must prove that defendant was criminally responsible for aggravating element); *Wooden v. State*, 101 S.W.3d 542, 547–48 (Tex. App.—Fort Worth 2003, pet. ref'd). In other words, the State had to prove that Gray acted with intent to promote or assist Ashford in committing aggravated robbery, that is, that he solicited, encouraged, directed, aided, or attempted to aid Ashford in placing Kevin and Kelly in fear of imminent bodily injury or death *and* in using or displaying a deadly weapon. *See* Tex. Penal Code Ann. § 7.02(a)(2).

Gray's written statements were the only evidence presented at trial pertaining to Gray's involvement in what had occurred before, during, and after the commission of the offenses.[4] From the evidence, we know that, on the day

---

[4] The evidence not previously described above included testimony from (1) Jesse Press, a maintenance worker at Kevin and Kelly's apartment, who testified as to what he saw when he found Kevin and Kelly's bodies two days after the shootings; (2) Constance Patton, a medical examiner, who testified

9

the offenses occurred, Gray showed Ashford his father's guns; that Gray went with Ashford to Kevin and Kelly's apartment to get more drugs, knowing that Ashford might *beat* Kevin and Kelly up and take the drugs without their consent; that Gray was downstairs when the shootings occurred; and that Gray saw Ashford with Gray's father's gun *after* the shootings had occurred.

There is no evidence, however, as to the timing of Gray's showing Ashford the guns and their conversation about beating Kevin and Kelly up and taking the drugs. There is no evidence to suggest that Gray encouraged or directed Ashford to take or use a gun against Kevin and Kelly in order to get the drugs. There is no evidence that Gray gave Ashford one of the guns or that he had seen Ashford take one of the guns. Nor is there evidence that Gray, at any time before or during the commission of the aggravating element, became aware of Ashford having or using a gun.

Based on the evidence in the record, the jury could have reasonably inferred that Gray, by going with Ashford to Kevin and Kelly's apartment, had agreed to be a party to beating Kevin and Kelly up and taking the drugs without

about items seized from Gray's house and Ashford's car, including the knife found in Gray's home which did not have any blood on it; (3) Frank Schiller, a forensic consultant, who testified about the drugs found in Kevin and Kelly's apartment; and (4) Marc Krouse, a medical examiner, who testified as to the wounds sustained by Kevin and Kelly.

their consent. *See Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007) (defining inference as a conclusion reached by considering other facts and deducing a logical consequence from them). It was not reasonable, however, for the jury to infer that because Gray had shown his father's guns to Ashford, that Gray knew Ashford had taken one of the guns with him to Kevin and Kelly's apartment, or that Gray intended to encourage or direct Ashford in using the gun during the confrontation with Kevin and Kelly. *See id.* (defining speculation as mere theorizing or guessing about the possible meaning of facts and evidence presented).

Further, the facts of this case are distinguishable from prior cases in which courts of appeals have held that the evidence is legally sufficient when a party to aggravated robbery learns of a deadly weapon during the commission of the offense and yet continues to participate in the offense. *See Escobar v. State*, 28 S.W.3d 767, 774 (Tex. App.—Corpus Christi 2000, pet. ref'd) (holding that evidence was legally sufficient to support aggravated robbery conviction under law of parties because defendant got into get-away vehicle with stolen items *while* other party pointed a firearm at victim); *Anderson v. State*, No. 14-00-00810-CR, 2001 WL 1426676, at *2 (Tex. App.—Houston [14th Dist.] Nov. 15, 2001, pet. ref'd) (not designated for publication) (concluding evidence was legally sufficient to support defendant's conviction

11

for aggravated robbery as a party when defendant continued to participate in the offense after *seeing* co-defendant pull out a gun and point it at complainant's face).

Here, the record reflects that not only did Gray lack knowledge as to the presence of the gun before the shootings but also that he did not learn about the gun until after the shootings had occurred. We conclude, therefore, that there is legally insufficient evidence to show that Gray and Ashford were acting together, each contributing some part toward the execution of placing Kevin and Kelly in fear of imminent bodily injury or death *and* in using or displaying a deadly weapon. *See Wooden*, 101 S.W.3d at 548 (stating that there was no evidence in the record that the appellant knew there was a gun in the car or that he aided or encouraged a co-defendant to threaten the victim with a gun); *Scott v. State*, 946 S.W.2d 166, 168 (Tex. App.—Austin 1997, pet. ref'd) (holding that the evidence did not suggest that defendant, who drove companions to a location where, without his knowledge, they committed aggravated robbery, had prior knowledge of his passengers' intent or that the defendant knowingly assisted his passengers in the offense).

Therefore, because it was unreasonable for the jury to infer that Gray had knowledge of the gun, and because the evidence reflects that Gray did not become aware of the gun until after the aggravating element had occurred, we

12

hold that the evidence is legally insufficient to prove that Gray was criminally responsible for Ashford using or displaying a deadly weapon during the commission of robbery and, therefore, is legally insufficient to support Gray's convictions for felony murder. Accordingly, Gray's fourth and sixth points are sustained—we need not address Gray's remaining points of error.[5] *See* Tex. R. App. 47.1.

Having determined that the evidence is legally insufficient to support the jury's verdicts for the offense of felony murder, and having impliedly determined that the evidence is legally insufficient to support convictions for the lesser included offense of aggravated robbery, we now consider whether the evidence

---

[5] In two of Gray's remaining points, he argues that the evidence is factually insufficient to support convictions for aggravated robbery, however, because we have concluded that the evidence is legally insufficient, we need not address Gray's arguments pertaining to factual sufficiency. *See* Tex. R. App. 47.1. In Gray's remaining three points, he asserts that the trial court erred by excluding statements that he had made to his father regarding the offense. Gray claims that the information in the excluded statements negates an element of the offense, namely that Gray acted with the intent to promote the commission of an *aggravated* robbery. Gray concedes there was sufficient evidence for robbery. As we have already concluded, based on the evidence presented at trial, the evidence is legally insufficient to support Gray's convictions for *aggravated* robbery, we need not address Gray's three remaining points. Furthermore, essentially the same information in the excluded statements came in through Gray's written statements. Therefore, any error from the trial court by refusing to admit the statements is harmless. *See Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991) (concluding that any error in admitting evidence is cured where the same evidence comes in elsewhere without objection).

13

is sufficient to support convictions for the lesser included offense of robbery. *See Collier*, 999 S.W.2d at 782.

A person commits the offense of robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code Ann. 29.02(a).

Gray's second written statement established that he went with Ashford to Kevin and Kelly's apartment knowing that Ashford might beat up Kevin and Kelly and take the drugs without their consent. A reasonable juror could conclude that, under the law of parties, Gray acted with intent to promote or assist Ashford in committing robbery, that is, that Gray entered an agreement in which robbery was contemplated, that Gray went with Ashford to the location of the offense, and that Gray acted with the intent to promote or assist the robbery by acting as the lookout. *See* Tex. Penal Code Ann. § 7.02(a)(2). Considering the evidence under the standards of review set forth above, we hold that it is legally and factually sufficient to support convictions for robbery.

## IV. Conclusion

Having held that the evidence is legally insufficient to convict Gray of two counts of felony murder but sufficient to convict him of two counts of robbery, we modify the trial court's judgment on count one to delete the conviction of murder and to instead reflect a conviction of the lesser included offense of robbery, we likewise modify the trial court's judgment on count two to delete the conviction of murder and to instead reflect a conviction of the lesser included offense of robbery, and we affirm the judgments as to the convictions as modified. We also reverse the trial court's judgments on punishment and remand the case to the trial court for a new trial on punishment only. *See* Tex. R. App. P. 43.2(c), (d).

BOB MCCOY
JUSTICE

PANEL: CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

CAYCE, C.J. dissents without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 2, 2009

15