Opinion issued August 16, 2007


 











In The

Court of Appeals

For The

First District of Texas






NO. 01-05-01016-CR






JUVENTINO LANCE FLORES, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 262nd District Court

Harris County, Texas

Trial Court Cause No. 1016222






MEMORANDUM OPINION


 Appellant, Juventino Lance Flores, appeals from a jury verdict for aggravated
robbery with a deadly weapon. See Tex. Pen. Code Ann. § 29.03 (Vernon 2003). 
After finding an enhancement to be true, the jury sentenced appellant to 30 years in
prison. In five issues on appeal, appellant argues that (1) the evidence is legally and
factually insufficient to support his conviction as a party to aggravated robbery; (2)
the trial court abused its discretion by admitting evidence of extraneous offenses; and
(3) the trial court's finding that he used or exhibited a firearm in the commission of
the offense is invalid.

 We affirm.

Background


 On February 8, 2005, the complainant, Victor Gutierrez, got a flat tire during
his drive home from a friend's house in the Aldine-Westfield area. After pulling into
a car wash, he called his wife, Abigail, but she could not leave the house because her
children were sleeping. The complainant called a wrecker on his cell phone at 12:02
a.m., left his truck at the car wash with the doors locked and the hazard lights on, and
began to walk home. (1) Approximately 10 to 15 minutes later, a black sports car with
a rear spoiler stopped and asked the complainant for directions. The complainant
thought it was odd that the occupants inside the car were asking for directions to
Highway 59 because the vehicle had come from that direction. The complainant had
started to walk home again when the passenger of the car appeared next to him and
stated, "Give me your money," in Spanish, and revealed a "big black gun" which he
was holding underneath his jacket. The complainant then handed him his wallet,
truck keys, and cell phone. Once the gunman took the complainant's items, the driver
of the car said, "Let's go," in Spanish. When the gunman looked back toward the
driver, the complainant saw the driver, as he was sticking his head out of the open
passenger door of the car, about 20 feet away. At trial, the complainant identified the
driver as appellant and testified that the gunman displayed a .44 magnum, a firearm. 
During the robbery, the complainant feared for his life. 

 The complainant's wife, Abigail, testified that about two hours after the
complainant was robbed, she went to look for the complainant's truck at the car wash. 
She testified that this happened at about 1:45 in the morning, an hour after the
complainant had arrived home. She drove by the car wash but did not see the truck. 
She eventually found the truck in a dark, wooded area away from the car wash. She
testified that she saw two people standing around the truck. They were holding
something and she saw sparks. She testified that the two people were trying to "light
up our truck." She proceeded to the fire station, told the personnel what had
happened, and returned with them to the car wash and saw the vehicle on fire. The
complainant testified that his truck had been burned after the robbery and that his
toolbox was missing from within the truck. 

 Dustin Deutsch, an arson investigator and certified peace officer with Harris
County, testified that he initially became involved in the case because the primary
investigation was a vehicle fire, but the secondary investigation was the crime related
with the vehicle fire. He testified that the complainant's truck had been intentionally
set on fire. He also testified that "the person that most likely set this fire that left the
vehicle in the remote location had the keys, had direct access to the vehicle." He
testified that this usually means that the owner was involved. Deutsch investigated
the vehicle's owner, the complainant, and determined that he had reported an
aggravated robbery. He also learned that the complainant's cell phone had been
stolen. 

 After sending a court order to Sprint PCS Communication to release all phone
records, Deutsch determined that an outgoing phone call was made from the
complainant's phone after the commission of the crime. Deutsch traced this call to
a person with the last name of Suarez who lived in the immediate area where the
crime was reported to have occurred. Deutsch went to the Suarez home and spoke
with the owners, who said that they had a daughter named Vanessa. Discussions with
Vanessa led Deutsch to the residence of Edward Martinez. Deutsch found the
complainant's cell phone in Martinez's bedroom. 

 Based on interviews with Martinez, the officers drove to appellant's residence.
When the officers arrived, they noticed a black, two-door Toyota Solara with a rear
spoiler in the driveway and learned that it belonged to appellant. Deutsch attempted
to talk with appellant, but he was not home. Deutsch then had the complainant
identify the driver from a photo line-up. Based on the identification, the officers
attempted to arrest appellant at his house. Although appellant was not home, the
officers found a .44-magnum shell casing and four .44-magnum bullets. 

 Martinez, who at the time of trial was residing in the Harris County jail,
testified that, on February 9, 2005, the police entered his house and found a stolen
cell phone. When the police questioned him at his home, Martinez told the police
that he received the stolen cell phone from appellant. At trial, Martinez testified that
he was not telling the truth when he told the officers that he received the phone from
appellant. He explained that he lied for revenge because he heard that appellant had
been "messing around" with his girlfriend. 

 Isabelle Flores, appellant's mother, testified that on February 8 and 9, her son,
appellant, was at home with her. 

 Legal Sufficiency


 In his first point of error, appellant argues that the evidence is legally
insufficient to show that he was a party to the aggravated robbery. 

 When evaluating the legal sufficiency of the evidence, we view the evidence
in the light most favorable to the verdict and determine whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Drichas
v. State, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). The standard is the same for
both direct and circumstantial evidence cases. King v. State, 895 S.W.2d 701, 703
(Tex. Crim. App. 1995). We do not resolve any conflict of fact, weigh any evidence,
or evaluate the credibility of any witnesses, as this is the function of the trier of fact. 
See Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson v. State,
819 S.W.2d 839, 843 (Tex. Crim. App. 1991). Instead, our duty is to determine
whether both the explicit and implicit findings of the trier of fact are rational by
viewing all the evidence admitted at trial in the light most favorable to the verdict. 
See Adelman, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are
resolved in favor of the verdict. Matson, 819 S.W.2d at 843.

 Law of Parties

 In order to convict appellant as a party to aggravated robbery, the State had to
prove that he was criminally responsible for the perpetrator's use or exhibition of a
firearm during the offense. See Stephens v. State, 717 S.W.2d 338, 340 (Tex. Crim.
App. 1986) (holding that, in order to convict defendant as party to aggravated
offense, there must be sufficient evidence that defendant was criminally responsible
for aggravating element); Wooden v. State, 101 S.W.3d 542, 547-48 (Tex.
App.--Fort Worth 2003, pet ref'd) (same). A person is criminally responsible for the
conduct of another if, "acting with intent to promote or assist the commission of the
offense, he solicits, encourages, directs, aids, or attempts to aid the other person to
commit the offense." Tex. Pen. Code Ann. § 7.02(a)(2) (Vernon 2003); Wooden,
101 S.W.3d at 546. In determining whether an accused bears criminal responsibility
for an offense, we may look to events before, during, and after the commission of the
offense. Beardsley v. State, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987).

 A person commits aggravated robbery if (1) in the course of committing a theft,
intentionally or knowingly threatened or placed another in fear of imminent bodily
injury or death and used or exhibited a deadly weapon or (2) acted with intent to
assist in the commission of the offense while encouraging, aiding, or attempting to
aid others in committing the offense. Tex. Pen. Code Ann. §§ 7.02(a)(2), 29.02,
29.03 (Vernon 2003).

 Appellant argues that he cannot be guilty as a party to aggravated robbery
merely because he was present when the gunman robbed the complainant and that the
State did not show "that appellant could see the firearm concealed beneath the
robber's clothes before or after the robbery." We agree that mere presence at the
scene is insufficient evidence to support a conviction under the law of parties. See
Valdez v. State, 623 S.W.2d 317, 321 (Tex. Crim. App. 1981). Here, however, the
State presented additional evidence of appellant's guilt as a party in addition to his
"mere presence." 

 The jury heard evidence that men in a black sports car with a rear spoiler
stopped to ask the complainant for directions. When the complainant continued to
walk home, the car stopped a second time, and the gunman exited the vehicle and
brandished a .44-magnum handgun. The complainant identified the driver of the
sports car as appellant. After the complainant gave his wallet, cell phone, and truck
keys to the robber, appellant told the gunman, "Let's go," in Spanish. 

 Although the State presented no direct evidence that appellant knew that the
gunman would rob the complainant, circumstantial evidence showed that appellant
assisted the gunman in carrying out the crime by providing transportation to the
robbery, waiting as the robbery was committed, and providing transportation for the
gunman to flee the scene with the stolen items. Circumstantial evidence also showed
that ammunition from the same type of firearm that was alleged to have been used in
the offense was found in appellant's room. The jury could also have concluded that
the words, "Let's go," stated after the complainant handed his wallet, cell phone, and
truck keys to the gunman, showed that appellant recognized the need that both he and
the gunman needed to leave the crime scene in a hurry. 

 Moreover, the jury could have rationally believed that appellant knew the
gunman was armed when he transported him to the scene of the robbery, that he saw
the firearm when he observed the robbery, and that he saw both the firearm and the
stolen items when the gunman returned to appellant's vehicle to flee the scene. After
Martinez told officers that he received the cell phone from appellant, officers went
to appellant's home and discovered a black two-door sports car with a rear spoiler in
the driveway and learned it belonged to appellant. Taking all of this evidence
together, we conclude the evidence is legally sufficient to convict appellant of
aggravated robbery under the law of parties. See Johnson v. State, 6 S.W.3d 709, 711
(Tex. App.--Houston [1st Dist.] 1999, pet. ref'd) (holding sufficient evidence of
aggravated robbery under law of parties because defendant performed reconnaissance
of robbery location and drove getaway car, but was not present at robbery when gun
was displayed); see also Escobar v. State, 28 S.W.3d 767, 774 (Tex. App.--Corpus
Christi 2000, pet. ref'd) (holding sufficient evidence of aggravated robbery under law
of parties because defendant entered getaway vehicle with stolen merchandise while
third party pointed gun at victim); Brewer v. State, 852 S.W.2d 643, 647 (Tex.
App.--Dallas 1993, pet. ref'd) (holding sufficient evidence of aggravated robbery
under law of parties because defendant dropped off and picked up accomplice who
committed armed robbery).

 We overrule appellant's first point of error.

Factual Sufficiency


 In his second point of error, appellant argues that the evidence is factually
insufficient to prove that he was a party to the aggravated robbery.

 When evaluating factual sufficiency, we consider all the evidence in a neutral
light to determine whether the jury was rationally justified in finding guilt beyond a
reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). 
Evidence may be insufficient if, considered alone, it is too weak to support the
verdict, or if, weighing all the evidence, the contrary evidence is strong enough that
the beyond-a-reasonable-doubt standard could not have been met. Id. at 484-85. In
conducting such a review, we consider all of the evidence weighed by the jury,
comparing the evidence that tends to prove the existence of the elemental fact in
dispute to the evidence that tends to disprove it. Vodochodsky v. State, 158 S.W.3d
502, 510 (Tex. Crim. App. 2005). We are authorized to disagree with the jury's
determination even if probative evidence exists to support the verdict, but we should
not substitute our judgment for that of the fact-finder. Id. In conducting a factual
sufficiency review, we consider the most important evidence that the appellant claims
undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App.
2003).

 Under his factual insufficiency argument, appellant incorporates by reference
his previous arguments from his legal insufficiency argument. The only evidence that
weighs in appellant's favor is the testimony of his mother, who testified that appellant
was at home with her around the time of the offense, and the testimony of Martinez,
who testified at trial that he had lied to the police when he told them that he received
the stolen cell phone from appellant. The jury, as trier of fact, is the sole judge of the
credibility of witnesses and may believe or disbelieve all or any part of a witness's
testimony. Reece v. State, 878 S.W.2d 320, 325 (Tex. App.--Houston [1st Dist.]
1994, no pet.). The jury could have disbelieved both the mother's testimony and the
changed story of Martinez. After reviewing all the evidence, we conclude that the
conviction is not so against the great weight and preponderance of the evidence as to
be manifestly unjust.

 We overrule appellant's second point of error.

Extraneous Offenses


 In his third and fourth points of error, appellant argues that the trial court
abused its discretion by admitting evidence of extraneous offenses committed several
hours after the alleged aggravated robbery. Specifically, appellant argues that the
trial court admitted evidence that someone, presumably appellant, stole the
complainant's tools from his vehicle and set the vehicle on fire. The State argues that
the evidence was admissible as same-transaction contextual evidence.

 A trial court's ruling on the admissibility of extraneous offenses is reviewed
under an abuse of discretion standard. Prible v. State, 175 S.W.3d 724, 731 (Tex.
Crim. App. 2005). As long as the trial court's ruling was within the "zone of
reasonable disagreement," there is no abuse of discretion, and the trial court's ruling
will be upheld. Id. 

 The trial court conducted a hearing on the admissibility of the extraneous
offenses. At this pre-trial hearing, appellant argued that admitting the extraneous
offense would unduly prejudice him pursuant to Rule 403. See Tex. R. Evid. 403. 
Appellant argued,

On Rule 403, the probability of damage to his--to the defendant based
on allowing this ancillary unrelated matter in is going to prejudice him
far beyond any probative value it has. There is no evidence at all that
this accused had anything to do with this setting of the fire. The car was
set on fire several hours--and as a matter of fact, it was the next day
after the robbery. It was not robbed and turn around and go back to the
car and take the car and set it on fire. 


The trial court ruled, "I'm going to let it in; and I will allow you to cross-examine on
it." Appellant made a further objection pre-trial and asked for a ruling from the trial
court. The trial court stated, 

As far as the motion to limine, it has been complied with. I will allow
the State to go into that in their opening statement. If it turns out that it
is not admissible at the time that it's offered, well, I'll make that ruling. 
I will say sustained. That does not come in. It is not relevant or
something to that effect. Right now I'm ruling on the motion to limit. 
Certainly your exception to that ruling is noted and let's proceed. 


Before the trial court ruled on the admissibility of photos that showed the burned
truck, appellant objected that the photos would be prejudicial to the accused. The
trial court made a finding that "their probative value outweighs any prejudicial
value." 

 On appeal, appellant now argues that the "extraneous offenses should have
been excluded under Texas Rules of Evidence Rules 401, 403 and 404." 
Preliminarily, we hold that appellant's complaints to the extraneous offenses pursuant
to Rule 404 are waived because appellant made no Rule 404 objection at trial. 
Appellant asserts the Rule 404 objections for the first time on appeal. See Tex. R.
App. P. 33.1 (stating that to preserve complaint for appeal, complaint must have been
made to trial court by timely request, objection, or motion). Appellant did preserve
his Rule 403 objection which we address. "A proper Rule 403 analysis includes, but
is not limited to, the following factors: (1) the probative value of the evidence; (2) the
potential of the evidence to impress the jury in some irrational, yet indelible, way; (3)
the time needed to develop the evidence; and (4) the proponent's need for the
evidence." Prible, 175 S.W.3d at 733. 

 Appellant argues that the extraneous offense evidence was not relevant because
the "extraneous offenses that occurred two hours [after the robbery] d[id] not make
the issue of identity during the aggravated robbery more or less probable than it
would be without the evidence of the extraneous offense." 

 The State argues that the evidence is relevant to the charged offense "within
the meaning of Rule 401 . . . to inferentially show in light of all the circumstances that
the vehicle and its contents were taken by the perpetrators of the robbery, and were
to that extent part of the proceeds of the robbery offense." The State does not argue
whether the probative value of the extraneous offenses is outweighed by unfair
prejudice. Instead, the State argues that the "complained-of evidence was clearly
intermixed with, related to, and connected with the robbery, and effectively showed
one continuous transaction" and therefore it was admissible as "same transaction
contextual evidence." 

 Same-transaction contextual evidence results when an extraneous matter is so
intertwined with the State's proof of the charged crime that avoiding reference to it
would make the State's case incomplete or difficult to understand. See Rogers v.
State, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993). The purpose of admitting
extraneous evidence as same transaction contextual evidence is to put the instant
offense in context. Camacho v. State, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993);
Swarb v. State, 125 S.W.3d 672, 681 (Tex. App.--Houston [1st Dist.] 2003, pet.
dism'd). This context permits the jury to realistically evaluate the evidence because
"crimes do not occur in a vacuum." Wilkerson v. State, 874 S.W.2d 127, 131 (Tex.
App.--Houston [14th Dist.] 1994, pet. ref'd). Generally, although a trial court must
still perform a balancing test to see if the same transaction contextual evidence's
probative value is substantially outweighed by its prejudicial effect, the prejudicial
nature of contextual evidence rarely renders such evidence inadmissible, as long as
it sets the stage for the jury's comprehension of the whole criminal transaction. 
Swarb, 125 S.W.3d at 681.

 Here, appellant complains of the extraneous offenses that concern burglary and
arson of the complainant's truck after two men robbed the complainant at gunpoint.
Notably, the complainant testified that the gunman stole his truck keys and that he left
his truck at a car wash with the doors locked and the hazard lights on. About two
hours after the complainant was robbed, the complainant's wife went looking for the
complainant's truck at the car wash, but did not see it. She eventually found the truck
in a dark, wooded area, saw two people standing around the truck holding something,
and saw sparks. She testified that the two people were trying to "light up our truck." 
The complainant testified that his truck was burned after the robbery and that his
toolbox was missing. Officer Deutsch testified that the person who moved the
complainant's vehicle to the spot where it was found had used its keys because the
truck did not show signs of forced entry. This testimony supports a reasonable
inference that whoever took appellant's keys also took his truck, removed the tool
box, and attempted to burn the truck. 

 Moreover, Officer Deutsch, an arson investigator, had originally investigated
a vehicle fire. He did not become involved in the investigation of aggravated robbery
until the complainant's wife discovered that the truck was not where it was supposed
to be and that two people were standing by the car attempting to set fire to it. His
investigation of that arson led him to the complainant's cell phone, which Martinez
had used after the robbery; to appellant's vehicle which matched the description of
the vehicle used by the robbers; and to appellant himself, whom the complainant
identified in a line-up as the driver.

 The extraneous offenses are contextual evidence that help to explain why the
police became involved in the case that led to the investigation of the underlying facts
and how the police ultimately arrested appellant for robbery. We also conclude that
the prejudicial effect of the extraneous evidence did not substantially outweigh its
probative value. The contextual evidence has probative value in that it shows how
the investigation of the arson led to appellant's arrest. We note that the evidence did
not have a high potential to impress the jury in some irrational, indelible way in light
of the fact that the arson investigation was rationally tied to the armed robbery. The
State did spend considerable time in developing the extraneous evidence, but the
amount of time was necessary to explain how the arson investigation ultimately led
police to appellant. As for the State's need for the contextual evidence, the State had
no way of explaining a fact of consequence, i.e., the events that led to appellant's
arrest. Thus, we conclude that the probative value of the evidence was not
"outweighed by danger of unfair prejudice, confusing of the issues, or misleading the
jury, or by considerations of undue delay, or needless presentation of cumulative
evidence and that the trial court did not abuse its discretion in admitting the
evidence." Tex. R. Evid. 403.

 We overrule appellant's third and fourth points of error.

Affirmative Finding on Deadly Weapon


 In his fifth point of error, appellant argues that trial court erred in failing to
submit a special issue to the jury requesting a finding on whether appellant used a
deadly weapon. Specifically, appellant argues that because the trial court included
a charge on the law of parties, the jury had to specifically find that he used or
exhibited a deadly weapon. 

 To convict appellant of aggravated robbery under the law of parties, the jury
was required to find that appellant intended to promote or assist the commission of
the offense. See Tex. Pen. Code Ann. § 7.02(a)(2). Thus, the jury was required to
find that appellant intended to promote or assist an unknown person in robbing the
complainant with a deadly weapon, namely, a firearm. Therefore, before the jury
could convict appellant as a party, it had to find that he knew a deadly weapon would
be used in the commission of the offense. See Sarmiento v. State, 93 S.W.3d 566,
570 (Tex. App.--Houston [14th Dist.] 2002, pet. ref'd); Johnson, 6 S.W.3d at 714. 
Because we previously held in appellant's first point of error that the State presented
legally sufficient evidence that appellant committed aggravated robbery as a party,
appellant's contention that the jury did not find that he used or exhibited a firearm is
incorrect. 

 We overrule appellant's fifth point of error.








Conclusion


 We affirm the judgment of the trial court.





 Evelyn V. Keyes

 Justice


Panel consists of Justices Nuchia, Keyes, and Higley.

Do not publish. Tex. R. App. P. 47.2(b).
1. The complainant left a message with the wrecker service's answering machine.