COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-08-078-CR

 

 

RUTH ELAINE ADKINS                                                          APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

              FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

Appellant Ruth Elaine Adkins appeals her
conviction for aggravated assault with a deadly weapon.  In two issues, she contends that the evidence
is legally and factually insufficient to support her conviction for aggravated
assault, and that the trial court erred by refusing her requested jury charge
on a lesser-included offense.  We affirm.








                                          I.  Background

Appellant lived in Hood County,
Texas, for about ten years along with her two children, James Arthur Newell and
Jennifer Louise Newell.  Appellant used
methamphetamine for most of those years. 
She got methamphetamine from her son, James, supplied methamphetamine
for her daughter, Jennifer, and smoked methamphetamine with both of her
children.  James had previously been to
prison and was a member of the Aryan Brotherhood prison gang.

When Jennifer and her boyfriend, James Padgett,
began Ashooting
up@ with
methamphetamine, appellant became upset and angry.  Appellant accused Padgett of Amaking
Jennifer pass out@ and then Adoing
sexual things@ with her.  Appellant even choked Padgett in her driveway
because she was so angry over his drug use with Jennifer.

In April 2006, Jennifer and Padgett broke up
briefly and Jennifer moved back in with appellant.  Appellant told Jennifer she knew what
Jennifer and Padgett were doing, she was mad about it, and, if she had anything
to do about it, they would Anever
get back together.@ 
Shortly thereafter, appellant=s son,
James, brought Robert Byrd, another Aryan gang member, to appellant=s home
for a meeting. 








Around April 29, 2006, appellant and James were
at a gathering in Brazos River Acres where everyone was drinking beer and
hanging out on the beach.  Appellant told
a friend and neighbor, Arvil Wayne Lee, that she was upset and she was going to
Aget even@ with
Padgett because he was shooting up her daughter.  She said she had friends who would take care
of Padgett for her, and that she Ahad [the
situation] under control.@ 
That evening, appellant=s son,
James, asked Arvil to Abe his alibi.@

A few days later, appellant met with Johnny
Freeman, another Aryan gang member, at Johnny=s
residence.  Johnny then went to Cleburne
to meet with fellow Aryan gang member, Robert.

On May 6, 2006, Robert and Daniel Roof, yet
another Aryan gang member, contacted Jennifer Perez about borrowing her truck
for some Aerrands@ around
Granbury.  Rather than allow them to take
her truck, Perez insisted on accompanying the men.  Daniel and Robert met Johnny at his
residence.  Johnny told his girlfriend,
Amber Gorman, he needed to Atake
care of some business@ with some friends and that he
would meet her later that day.  The three
men talked together in a back room. 
Daniel, Robert, Johnny, and Perez then drove to a convenience store
where they met James and appellant and talked for about fifteen minutes.








After meeting with appellant, Daniel, Robert, and
Johnny went looking for Padgett.  On the
way to Padgett=s house in Oak Trail Shore, they
talked about how Padgett was hurting James=s sister,
Jennifer.  When they got to Padgett=s house,
Jennifer answered the door and told them that Padgett was not home, so they
left.  On their way out of the Oak Trail
Shores neighborhood, they saw Padgett entering the gates and turned
around.  After stopping Padgett=s
vehicle, they jumped out of the truck with knives in hand.  About five minutes later, they returned to
the truck with blood on them and breathing heavily.  As they left the scene, Robert used a stuffed
animal in the truck to wipe the blood off his arm and then threw the bloodied
toy, as well as the knives, out of the truck window.  The three men then bought some new clothes at
a Wal-Mart, stopped at a truck stop to change, and drove to a motel in Desoto,
Texas.

When Johnny=s
girlfriend, Amber, returned home late that afternoon and found that Johnny was
not home, she called several people, including appellant, looking for
Johnny.  Appellant told Amber that there
had been a stabbing in Oak Trail Shores and that the police thought Johnny did
it.  Shortly thereafter, appellant called
Amber and asked her to meet appellant at Brazos River Acres.  Once there, appellant told Amber that Johnny
wanted to meet them in Hillsboro.

Appellant and Amber drove to Hillsboro, where
they met Robert and Johnny at a gas station. 
Amber noticed that the men were wearing different clothes than they had
been wearing earlier.  Appellant rented a
nearby motel room where the four of them went to talk. 








While in the motel room, Robert detailed Padgett=s
stabbing.  He acted proud of what he had
done, and appellant appeared happy and excited. 
The more Robert talked about the stabbing, the more excited and Aturned
on@
appellant became.

Appellant and Robert stepped out for about thirty
minutes while Johnny and Amber talked inside the motel room.  Johnny cried as he told Amber about the
stabbing.  When appellant and Robert
returned to the room, appellant=s
demeanor had changed from excited and Aturned
on@ to
relaxed and calm.  Appellant told Amber
that she needed to go to the bathroom to Awipe
herself,@ which
Amber understood to mean that appellant and Robert had just engaged in
sex.  The next day Amber, Johnny, and
appellant went to Glen Rose.  Robert did
not accompany them. 

Padgett was airlifted to Harris Methodist
Hospital in Fort Worth after the stabbing. 
Having suffered massive blood loss, he underwent surgery to repair
multiple stab wounds in his heart and his torso.  He was eventually transferred to a nursing
home facility where he died of pneumonia nearly a year later.  The medical examiner listed Padgett=s cause
of death as complications from multiple stab wounds.

A Hood County grand jury indicted appellant in
July 2006 for aggravated assault with a deadly weapon. 








Before testifying at trial, Amber received
threats from members of the Aryan Brotherhood and Aryan Circle concerning her
testimony.  Jennifer also feared
retaliation from the Aryan gang members. 
On February 12, 2008, a jury convicted appellant of aggravated assault
with a deadly weapon and sentenced appellant to twenty years in prison and a
fine of $10,000.

                                II.
Sufficiency of the Evidence

In her first issue, appellant contends that the
evidence is legally and factually insufficient to prove that she knew a deadly
weapon would be used in the assault or that she contributed in some part toward
the execution of the attack.  Appellant
asserts that the evidence establishes only that she is guilty of assault. 

                                     A.  Standard of Review








In reviewing legal sufficiency, we consider all
the evidence in the light most favorable to the verdict and determine whether a
rational juror, based on the evidence and reasonable inferences supported by
the evidence, could have found the essential elements of the crime beyond a
reasonable doubt.[1]  We defer to the Aresponsibility
of the trier of fact to fairly resolve conflicts in testimony, to weigh
evidence, and to draw reasonable inferences from basic facts to ultimate facts.@[2]  The jury is permitted to draw multiple
inferences as long as each inference is supported by the evidence presented at
trial.[3]  Each fact need not point directly and
independently to appellant=s guilt,
as long as the cumulative force of all the incriminating circumstances is
sufficient to support the conviction.[4]  Circumstantial evidence is as probative as
direct evidence in establishing guilt, and circumstantial evidence alone can be
sufficient to support a conviction.[5]  On appeal, the standard of review is the same
for both circumstantial and direct evidence cases.[6]








When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.[7]  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
factfinder=s determination is clearly wrong
and manifestly unjust or whether conflicting evidence so greatly outweighs the
evidence supporting the conviction that the factfinder=s
determination is manifestly unjust.[8]  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.[9]








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by evidence
that is legally sufficient, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@[10]  We cannot conclude that a conviction is
clearly wrong or manifestly unjust simply because we would have decided
differently than the jury or because we disagree with the jury=s
resolution of a conflict in the evidence.[11]  We may not simply substitute our judgment for
the factfinder=s.[12]  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@[13]  Thus, we must give due deference to the
factfinder=s determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@[14]

                             B.  Elements of Aggravated Assault

A person commits aggravated assault when he or
she commits an assault as defined in Texas Penal Code section 22.01 while using
or exhibiting a deadly weapon.[15]  Assault is intentionally, knowingly, or
recklessly causing bodily injury to another.[16]

            C.  Criminal Responsibility for Aggravated
Assault as a Party








A person may be convicted of aggravated assault
as a party Aif, acting with intent to
promote or assist the commission of the aggravated assault, he or she solicits,
encourages, directs, aids, or attempts to aid@ another
person to commit the aggravated assault.[17]  The intent to promote or assist in the
commission of the offense goes to each element of the offense charged.[18]  We look at Aevents
occurring before, during and after the commission of the offense and may rely
on actions of the defendant which show an understanding and common design to do
the prohibited act.@[19] 








When a deadly weapon is alleged in the indictment
as an element of the offense, the jury is authorized to find the defendant
guilty as a party only if the State meets its burden of proving beyond a
reasonable doubt that the defendant knew a deadly weapon would be used or
exhibited.[20]  If the jury returns a verdict of guilty as
charged in the indictment, we presume that the jury has implicitly found beyond
a reasonable doubt that the defendant used or exhibited a deadly weapon or, if
acting as a party, knew that a deadly weapon would be used or exhibited.[21]

                                            D.  Analysis

In this case, the jury implicitly found beyond a
reasonable doubt that appellant knew a deadly weapon would be used.  The evidence supporting this implied finding
is as follows:








Appellant was angry at Padgett and blamed him for
her daughter=s injecting
methamphetamine.  She had told her daughter
that, if she had her way, the two would never get together again.  Appellant admitted at trial that she wanted
someone to beat Padgett up for her.  She
had bragged to a friend and neighbor that she was going to stop Padgett, that
she had a lot of friends, and that she had the matter Aunder
control.@  During the same conversation, her son, James,
a member of the Aryan Brotherhood gang, asked the neighbor to be his Aalibi.@  Appellant asked Johnny, also an Aryan gang
member and someone whom appellant considered a Atough
guy,@ to beat
up Padgett for her.  A week before the
attack, Robert visited James at appellant=s home
while appellant was present.  Less than
an hour before the stabbing, appellant and James met the attackers at a
convenience store.  Immediately after the
attack, when appellant got word that Padgett had been stabbed, the evidence
shows that appellant knew who was responsible. 
Appellant=s daughter, Jennifer, believed
appellant was behind the attack. 
Appellant drove the girlfriend of one of the attackers to Hillsboro,
rented a motel room for all the attackers, and listened with apparent approval
as Robert relayed the details of the stabbing. 
The girlfriend testified that, as Robert spoke, appellant got more and
more excited and apparently engaged in sex with him after he had finished his
account.

Viewing this direct and circumstantial evidence
in the light most favorable to the verdict, we hold that a rational jury could
reasonably infer that appellant solicited and encouraged the attack, was aware
that it would involve the use of a deadly weapon, and condoned its execution
after it was accomplished.  Therefore,
the evidence is legally sufficient to support the verdict.








Furthermore, when we examine all the evidence in
a neutral light, we cannot say that this evidence is so weak as to render the
verdict clearly wrong and manifestly unjust. 
Nor can we say the great weight and preponderance of the evidence
contradicts the verdict.[22]  The only evidence contrary to the verdict is
the testimony of appellant=s friend
and neighbor, Arvil Wayne Lee, and of appellant herself.  Arvil testified that he did not feel that
appellant wanted Padgett killed. 
Although appellant admitted at trial she asked Johnny to beat up
Padgett, she said she Anever once wanted anyone harmed
like that.@ 
She Afigured that Johnny would kick
his ass, like I asked him to.  I never
once thought that it would take more than Johnny to do what I asked.@  This testimony clearly does not outweigh the
evidence showing that appellant solicited and encouraged the attack and was
aware that it would likely involve the use of a deadly weapon.  We, therefore, hold that the evidence is also
factually sufficient to support the jury=s implied
finding that appellant knew a deadly weapon would be used.

Relying on our opinion in Wooden v. State,[23]
appellant further contends that there is also no evidence that, at the time of
the offense, appellant contributed in some part toward the execution of the
attack.  Wooden is inapposite to
this case.








In Wooden, the appellant contended that
the evidence was legally insufficient to prove that he was a party to
aggravated robbery because it showed he was merely present at the scene of the
offense and assisted in the getaway.  The
question before the court was, therefore, whether proof that an accused is present
at the scene of a crime or assists in a getaway, standing alone, is sufficient
to prove whether the accused is guilty as a party.[24]  We concluded it was not.  Rather, we held that when the accused is
present at the scene of a crime, A[t]he
evidence must show that at the time of the offense, the parties were acting
together, each contributing some part toward the execution of their common
purpose.@[25]  Because there was no evidence that Wooden
knew a gun was used or exhibited in the robbery, we held that the evidence was
insufficient to prove Wooden was a party to the aggravated robbery even though
he facilitated the getaway.  We did not
address the circumstances presented here where the accused is not
present at the scene of the crime, but acting with intent to promote or assist
the commission of an offense, solicits and encourages the other person to
commit the offense before the offense is committed.[26]








Here, the evidence shows that appellant, acting
with intent to promote the commission of the aggravated assault, solicited and
encouraged Johnny to commit the offense. 
The fact that she was not physically present when the offense was
committed and did not contribute some part to the stabbing of Padgett at the
time of the offense is immaterial under the circumstances of this case.  As we observed in Wooden, section A7.02(a)(2)
does not require that a party=s
actions constitute one or more elements of the intended offense, only that the
party=s
actions show the intent to promote or assist the offense and that the party
encouraged, solicited, directed, or aided the commission of the offense.@[27]  The plain language of section 7.02(a)(2)
requires nothing more, and we are not inclined to rewrite the statute to
require more than the legislature intended. 


We overrule appellant=s first
issue.

                                  III.  Lesser Included Offense








In issue two, appellant claims
that the trial court erred in refusing her requested jury charge on assault as
a lesser included offense.  Appellant
contends that there is some evidence that she was unaware that a deadly weapon
would be used.  She argues that since the
aggravated assault charge was based on use of a deadly weapon, any evidence
that she was unaware that a deadly weapon would be used is some evidence that
she was not liable for the aggravating element and therefore, if guilty, guilty
only of assault.

We use a two-step analysis to determine whether
appellant was entitled to a lesser included offense instruction.[28]  First, the lesser offense must come within
article 37.09 of the code of criminal procedure.[29]  Article 37.09(3) provides, AAn
offense is a lesser included offense if . . . it differs from the offense
charged only in the respect that a less culpable mental state suffices to
establish its commission.[30]  Assault satisfies this first step.[31]








The next step is to determine whether some
evidence exists that would permit a jury to rationally find that if appellant
is guilty, she is guilty only of the lesser offense.[32]  This step acknowledges that there are factual
circumstances in which an offense is indeed a lesser included offense under the
first step, but a jury charge instruction is not required because the conditionCthat the
defendant is not guilty of the greater offense but is guilty only of the lesserCis not
met.[33]  In such a case, the offense remains a lesser
included, but the trial court is not required to instruct the jury on it.[34]








The evidence must be evaluated in the context of
the entire record.[35]  There must be some evidence from which a
rational jury could acquit the defendant of the greater offense while
convicting her of the lesser.[36]  The court may not consider whether the
evidence is credible, controverted, or in conflict with other evidence.[37]  Anything more than a scintilla of evidence
may be enough to entitle a defendant to a lesser charge.[38]  A charge on the lesser included offense is
not required when the defendant presents no evidence or presents evidence that
no offense was committed and there is no evidence otherwise showing that the
defendant is guilty of a lesser included offense.[39]  A defendant is entitled to a charge on
assault only if there is more than a scintilla of evidence to show that, if
guilty at all, the defendant is only guilty of assault.

There is nothing in the record of this case to
suggest that appellant acted alone.  The
evidence is uncontroverted that she acted with others.  Further, it is undisputed that appellant=s
cohorts used a deadly weapon in the offense and the evidence shows that the
attack would not have occurred without appellant=s
encouragement.  There is no evidence that
the attackers would have acted without appellant=s
encouragement, or that they committed only an assault.  The evidence was undisputed that Padgett was
assaulted with knives that in their manner of use and intended use were capable
of causing death or serious bodily injury.

Because there is no evidence that appellant acted
alone and not as a party, or that the offense committed was a mere assault, the
trial court did not abuse its discretion in refusing appellant=s
requested instruction on assault as a lesser included offense.[40]  We overrule point number two.








Having
overruled all of appellant=s
issues, we affirm the judgment.

 

 

 

JOHN CAYCE, 

CHIEF JUSTICE

 

PANEL:  CAYCE, C.J.; HOLMAN and
GARDNER, JJ.

 

PUBLISH

 

DELIVERED:  December 4, 2008











[1]Jackson v. Virginia, 443 U.S. 307, 319, 99
S. Ct. 2781, 2789 (1979); Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim.
App. 2007).





[2]Jackson, 443 U.S. at 318B19, 99 S. Ct. at 2789; Hooper,
214 S.W.3d at 13.





[3]Hooper, 214 S.W.3d at 15.





[4]Id. at 13; see Johnson v.
State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993), cert. denied, 511
U.S. 1046 (1994).





[5]Hooper, 214 S.W.3d at 13; Guevara
v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).





[6]Hooper, 214 S.W.3d at 13; Guevara,
152 S.W.3d at 49.





[7]Watson v. State, 204 S.W.3d 404, 414
(Tex. Crim. App. 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex.
Crim. App. 2005).





[8]Watson, 204 S.W.3d at 414B15, 417; Johnson v.
State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).





[9]Watson, 204 S.W.3d at 417.





[10]Id.





[11]Id.





[12]Johnson, 23 S.W.3d at 12; Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).





[13]Johnson, 23 S.W.3d at 8.





[14]Id. at 9.





[15]Texas Penal Code Ann. ' 22.02(a)(2)(Vernon Supp.
2008).





[16]Id. ' 22.01(a)(1).





[17]See Texas Penal Code Ann. ' 7.02(a)(2)(Vernon 2003);
Hooper, 214 S.W.3d 14 n.3; Frank v. State, 183 S.W.3d 63,
72 (Tex. App.CFort Worth 2005, pet. ref=d).





[18]See Stephens v. State, 717 S.W.2d 338, 340
(Tex. Crim. App. 1986); Duke v. State, 950 S.W.2d 424, 427 (Tex. App.CHouston [1st Dist.] 1997,
pet. ref=d).





[19]Hooper, 214 S.W.3d at 13
(quoting Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985), cert.
denied, 476 U.S. 1101 (1986)).





[20]Tex. Crim. Proc. Ann.
art. 42.12, ' 3g(a)(2) (Vernon Supp.
2008); Sarmiento v. State, 93 S.W.3d 566, 570 (Tex. App.CHouston [14th Dist.]
2002, pet. ref=d); Barnes v. State,
62 S.W.3d 288, 303B04 (Tex. App.CAustin 2001, pet. ref=d); Taylor v. State,
7 S.W.3d 732, 740B41 (Tex. App.CHouston [14th Dist.]
1999, no pet.).





[21]Sarmiento, 93 S.W.3d at 570; see
Polk v. State, 693 S.W.2d 391, 394 (Tex. Crim. App. 1985).





[22]See Watson, 204 S.W.3d at 417; Brown
v. State, 212 S.W.3d 851, 863 (Tex. App.CHouston [1st Dist.] 2006, pet. ref=d) (op. on reh=g), cert. denied,
128 S. Ct. 1088 (2008).





[23]101 S.W.3d 542 (Tex. App.CFort Worth 2003, pet. ref=d).





[24]Id. at 546.





[25]Id.; see also Brooks
v. State, 580 S.W.2d 825, 831 (Tex. Crim. App. 1979) (holding that under
former party statute, in instances where the accused is present during the
commission of an offense, evidence must show that the accused encouraged the
commission of the offense by acts, words, or other assistance).





[26]Tex. Penal Code Ann. ' 7.02(a)(2).





[27]Wooden, 101 S.W.3d at 548 n.1; see
Tex. Penal Code Ann. ' 7.02(a)(2).





[28]Hall v. State, 225 S.W.3d 524, 528
(Tex. Crim. App. 2007); Rousseau v. State, 855 S.W.2d 666, 672B73 (Tex. Crim. App.), cert.
denied, 510 U.S. 919 (1993).





[29]Tex. Code Crim. Proc.
Ann. art. 37.09 (Vernon 2006); Moore v. State, 969 S.W.2d 4, 8 (Tex.
Crim. App. 1998).





[30]Tex. Code Crim. Proc.
Ann. art. 37.09(3) (Vernon 2006).





[31]Ferrel v. State, 55 S.W.3d 586, 589
(Tex. Crim. App. 2001).





[32]Hall, 225 S.W.3d at 536; Salinas
v. State, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); Rousseau, 855
S.W.2d at 672B73.





[33]Pickens v. State, 165 S.W.3d 675, 679
(Tex. Crim. App. 2005); see also Irving v. State, 176 S.W.3d 842, 845B46 (Tex. Crim. App.
2005); Hayward v. State, 158 S.W.3d 476, 478 (Tex. Crim. App. 2005).





[34]Pickens, 165 S.W.3d at 679.





[35]Moore, 969 S.W.2d at 8.





[36]Id.





[37]Id.





[38]Hall, 225 S.W.3d at 536.





[39]Lofton v. State, 45 S.W.3d 649, 652
(Tex. Crim. App. 2001).





[40]See Moore, 969 S.W.2d at 8; Bruton
v. State, 921 S.W.2d 531, 537B 538 (Tex. App.CFort Worth 1996, pet. ref=d)(Evidence that defendant
aided accomplice who used deadly weapon was found sufficient to support
defendant=s guilt as a party to
aggravated offense).