

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-11-00021-CR

KEVIN STEVENSON                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. Introduction

A jury found Appellant Kevin Stevenson guilty of aggravated robbery with a deadly weapon and sentenced him to twelve years in prison. The trial court entered judgment accordingly. In one issue, Appellant challenges the sufficiency of the evidence supporting his conviction, arguing that acquittal is required

---

[1]*See* Tex. R. App. P. 47.4.

because the evidence at trial showed aggravated assault but not aggravated robbery. We affirm.

## II. Background

During the night of June 18, 2009, Roosevelt Powe, Jr. drove his vehicle, an El Camino, into a gas station parking lot in east Fort Worth, Texas. Powe remained inside his vehicle with the windows down for as long as thirty minutes as he checked voice messages and returned telephone calls. While sitting in the vehicle, Powe noticed that another vehicle, a GMC Jimmy, parked near his El Camino and that a woman and man, later identified as Demita Stevenson[2] and Anthony Young, were rummaging through the vehicle as if they were looking for something. Powe also saw two young men walk up to the GMC Jimmy and converse with Demita and Young. The two men went inside the store and returned to the GMC Jimmy where they further conversed with Demita and Young.

Powe testified that shortly thereafter, he saw one of the men pull a bandana over his face and walk away from the GMC Jimmy. Powe testified that the man with the bandana, who Powe later identified in a photo lineup and at trial as Appellant, stood at the driver's door of his El Camino and pointed a shotgun at him. The evidence is conflicting as to whether Appellant said anything to Powe

---

[2]Because Demita Stevenson and Appellant have the same last name, we refer to Demita Stevenson as Demita.

or not.[3]  However, Powe testified that he tried to escape by driving away from Appellant and that Appellant shot him in the shoulder before he could escape. Although he had been shot, Powe was able to drive away and flag down a Fort Worth police officer patrolling in the area.

Demita, who is Appellant's aunt, was a reluctant trial witness, but she confirmed that she provided a written statement to the investigating detective.  In that statement, which was admitted into evidence by the defense, Demita wrote, "Me and my boyfriend Anthony Young [were] sitting in our . . . GMC Jimmy and my two nephews walked up and ask[ed] me to take them to hit a lick.  And I said no.  We were sitting at Conoco on Berry St. about 10:30 p.m. parked next to a brown El Camino."  Demita identified her other nephew as Gary Lee.  Young testified that "hitting a lick" means "going to get some money."

Bobby Davis testified that Appellant is his wife's relative and that Powe is also "like family."  Davis testified that he had seen Appellant a day or two before the shooting and had invited Appellant to his home to shower, eat, cut his hair, and get a change of clothes because Appellant seemed to be having a difficult time.  Davis further testified that Lee, who is his brother-in-law, was living with him and his wife at the time and that Lee, Appellant, Davis, and Davis's wife were at Davis's home watching television together on the evening of the shooting.

---

[3]For example, Powe initially testified that he did not recall whether Appellant said anything before shooting him, but he testified on cross-examination that Appellant said, "Don't move, don't do anything."  Powe also testified that Appellant "didn't say anything about robbing me."

3

Davis testified that Appellant and Lee announced around 11 p.m. that they were "fixing to leave to try to go make some money" and that they left his house shortly thereafter. Appellant returned to Davis's house around 6 or 7 a.m. the next morning and told Davis that he had "tried to go make him some money," that "[t]he dude tried to pull off," and that he had "squeezed the trigger." Appellant also told Davis later that morning that "[h]e knew somebody needed some parts for a[n] El Camino and he happened to see one."

Appellant's primary defensive theory at trial related to identity. In that regard, Appellant's attorneys extensively cross-examined Powe concerning his identification of Appellant as the shooter, the investigating detective about his alleged failure to investigate the potential involvement of other persons, and Davis concerning the discrepancies between his testimony at trial and that given before the grand jury. Their cross-examination of Davis alone covers more than 100 pages of the reporter's record. They also called two witnesses specifically to impeach parts of Davis's testimony, and one of those witnesses testified that Davis does not have a good reputation in the community for truthfulness.

### III. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Isassi v. State*, 330 S.W.3d 633, 638

4

(Tex. Crim. App. 2010).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638.

The trier of fact is the sole judge of the weight and credibility of the evidence.  *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009).  Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder.  *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict."  *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007).  We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution.  *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Isassi*, 330 S.W.3d at 638.

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor.  *Isassi*, 330 S.W.3d at 638; *Hooper*, 214 S.W.3d at 13.  In determining the sufficiency of the evidence to show an appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—

even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

## IV. Discussion

Appellant contends in one issue that the evidence is insufficient to sustain his aggravated robbery conviction. Specifically, Appellant argues that there is no credible evidence that he was in the course of committing theft when the shooting occurred and that there can be no aggravated robbery when the underlying theft was not completed. Appellant does not challenge whether he was the person who approached and shot Powe.

## A. Applicable Law

A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code Ann. § 29.02(a) (West 2011); *see Wooden v. State*, 101 S.W.3d 542, 546 (Tex. App.—Fort Worth 2003, pet. ref'd). The robbery is aggravated if a deadly weapon is used or exhibited during the commission of the offense. Tex. Penal Code Ann. § 29.03(a)(2) (West 2011); *see Wooden*, 101 S.W.3d at 546. The penal code defines "[i]n the course of committing theft" as conduct that occurs *in an attempt to commit theft*, during the commission of theft, or in immediate flight after the commission of theft. Tex. Penal Code Ann. § 29.01(1) (West 2011); *see Sorrells v. State*, 343 S.W.3d 152, 155–56 (Tex. Crim. App. 2011). "It is well

6

settled that intent to commit theft can be inferred from the surrounding circumstances." *Roper v. State*, 917 S.W.2d 128, 132 (Tex. App.—Fort Worth 1996, pet. ref'd) (citing *Coronado v. State*, 508 S.W.2d 373, 374 (Tex. Crim. App. 1974)).

## B. Application

Appellant first contends that there is insufficient evidence that he was in the course of committing theft when he shot Powe. He points to Powe's initial testimony that the shooter did not say anything to him before the shooting, Powe's subsequent testimony that the shooter said, "Don't move, don't do anything," and Powe's statement to the responding officer that "they tried to rob me." In doing so, Appellant argues that the "don't move, don't do anything" statement "is certainly no proof that a robbery was taking place" and that Powe's belief that Appellant was trying to rob him is speculation.

The evidence to which Appellant points is similar to that in *Reed v. State*, No. 10-11-00158-CR, 2012 WL 662327, at *1, 6 (Tex. App.—Waco Feb. 29, 2012, pet. ref'd) (mem. op., not designated for publication). There, Robert and Bernice Jackson were traveling in their truck and stopped at a stop sign. *Id.* at *1. While they were stopped, Reed tapped on the passenger's side window with a silver handgun. *Id.* Neither victim heard Reed say anything. *Id.* Mr. Jackson reacted by "flooring" the truck and driving away, but Reed clung to the tailgate of the truck and did not let go, climbing into the bed of the truck. *Id.* Reed did not flee until after Mr. Jackson drove the truck into a ditch. *Id.* Mr. Jackson testified,

7

"When I saw the gun, I kn[e]w he . . . wasn't asking for a ride. I knew that when he came up to my door with a gun in his hand . . . I thought he was going to take my vehicle and harm one of us or both of us." *Id.* at *6. Noting that a specific verbal command is not required for there to be sufficient evidence of an intent to steal and that intent may be inferred from the circumstances, the court held that "a rational factfinder could conclude that Reed intended to commit theft." *Id.*

There is more evidence of Appellant's intent to steal in this case than in *Reed*. In addition to Powe's belief, as expressed to the responding officer, that Appellant tried to rob him and Powe's conflicting testimony as to whether Appellant said anything before shooting him, there is evidence that Appellant expressed to both Davis and Demita before the incident that he was looking "to make some money" or "hit a lick." Davis repeatedly testified on cross-examination that Appellant said before the shooting that he and Lee were going to try to "make some money" and that Appellant admitted the next morning to trying to "make some money" but shooting the man when he tried to drive away. Davis further testified that Appellant had talked about knowing someone who was looking for El Camino parts and that Appellant had unexpectedly seen an El Camino. Also, Demita wrote in her statement that Appellant and Lee had asked her about "hitting a lick" when they approached her and Young in the convenience store parking lot just before the shooting. Although Davis's credibility was a hotly disputed issue at trial and Demita disputed the accuracy of her written statement while testifying, the jury, in its role as the factfinder, could

8

have determined beyond a reasonable doubt from the evidence at trial that Appellant shot Powe "in the course of committing theft" in that he did so in an attempt to commit theft. *See* Tex. Penal Code Ann. § 29.01(1); *see Sorrells*, 343 S.W.3d at 155–56.

Appellant also asserts that "even if one could surmise that the shooter's motive was to commit theft, since there was no theft, there could not have been a robbery." But Appellant's contention is incorrect. "The [Texas] Court of Criminal Appeals has stated that although theft is an integral part of the offense of aggravated robbery, the actual *completion* of a theft is not necessary for conduct to constitute robbery." *Blount v. State*, 851 S.W.2d 359, 364 (Tex. App.—Houston [1st Dist.] 1993, no pet.) (citing *Cook v. State*, 840 S.W.2d 384, 387 (Tex. Crim. App. 1992), *overruled on other grounds by Ex parte Hawkins*, 6 S.W.3d 554, 558–59 (Tex. Crim. App. 1999)); *see also Young v. State*, 283 S.W.3d 854, 862 (Tex. Crim. App.) (stating in a capital murder case that "[t]he State did not bear the burden of proving that the appellant completed the theft of the victim in order to establish the underlying offense of robbery or attempted robbery"), *cert. denied*, 130 S. Ct. 1015 (2009); *Goessler v. State*, Nos. 02-03-00451-CR, 02-03-00452-CR, 2004 WL 1858133, at *9 (Tex. App.—Fort Worth Aug. 19, 2004, no pet.) (mem. op., not designated for publication) (noting that robbery conviction did not require that property was obtained during commission of crime). Thus, it is of no consequence for purposes of Appellant's aggravated robbery conviction that he did not complete a theft.

9

Applying the appropriate standard of review, we hold that the evidence is sufficient to support the jury's verdict, and we therefore overrule Appellant's sole issue.  *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638.

## V.  Conclusion

Having overruled Appellant's sole issue, we affirm the trial court's judgment.

ANNE GARDNER<br>
JUSTICE

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 3, 2012